## Richmond

JAMES EDWARD RILEY

v.

COMMONWEALTH OF VIRGINIA

No. 1608-90-2

Decided January 7, 1992

COUNSEL

Gary R. Hershner (Hershner, Faries & Jacobs, on brief), for appellant.

Michael T. Judge, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

BENTON, J.—James Edward Riley appeals from his convictions for the unlawful possession of cocaine and the willful failure to appear in general district court. Riley claims the trial judge erred in refusing (1) to suppress evidence seized from him during an unlawful stop, and (2) to sustain his motion to strike the charge of failure to appear at a court hearing while he was free on bail. We reverse both convictions.

I.

At a hearing on the motion to suppress evidence and at the ensuing trial, the evidence proved that police officer F. Thomas Lloyd observed Riley exit a vehicle at Dundee Street near the corner of the Midlothian Turnpike. According to Lloyd, Riley turned his back to Lloyd, made a motion to his waistband, and closed the door to his vehicle. Riley continued in the direction to which he turned. "He walked up to the sidewalk and he walked into the shadows, and he started walking toward Midlothian Turnpike." Though Lloyd never saw any object, Lloyd testified that he believed that Riley had a weapon which he was attempting to hide. Remaining in his police cruiser, Lloyd followed Riley and turned

on a bright light at the side of his police vehicle. When Riley turned to face Lloyd, Lloyd exited his vehicle and walked toward Riley. As Riley walked back toward his own vehicle, Lloyd identified himself as a police officer and told Riley to stop.

Lloyd told Riley to put his hands on Riley's vehicle and conducted a pat-down search. Lloyd patted Riley's waistband and Riley's left front pocket, where Lloyd felt a package that he concluded to be cocaine. Lloyd testified that he told Riley that he knew Riley had cocaine in his pocket and Riley told him to go ahead and look. Lloyd found a bag containing .5 grams of cocaine and arrested Riley.[1]

Riley stipulated at trial that he did not appear in the general district court on November 14, 1989, but explained that he was incarcerated in New York that day. In support of this contention, Riley offered into evidence a document from the City of New York, Department of Corrections, stating that he was incarcerated in the City of New York on November 14, 1989. The Commonwealth stipulated to the admission of the document. The document was the only evidence offered by Riley or the Commonwealth relating to the charge of willfully failing to appear in general district court.

The jury convicted Riley of the charges of possession of cocaine in violation of Code § 18.2-308.4 and willful failure to appear in court in violation of Code § 19.2-128.

## II.

"[W]henever a police officer accosts an individual and restrains [that person's] freedom to walk away, [the officer] has 'seized' that person." *See Terry v. Ohio,* 392 U.S. 1, 16 (1968). It is well-established that an investigatory stop may be initiated only when an officer has "a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." *Brown v. Texas,* 443 U.S. 47, 51 (1979). When examining the officer's

---

[1] After other police units arrived, Lloyd searched along the route Riley walked and discovered a handgun approximately two feet from the right front side of Riley's vehicle. Lloyd stated that "there [were] other people outside at the time," but he believed Riley discarded the gun when he saw Lloyd approaching him. At the conclusion of the trial, the trial judge granted Riley's motion to strike the evidence with respect to possession of the handgun.

articulable reasons for stopping a person, we examine the objective reasonableness of the officer's behavior rather than the officer's subjective belief that the conduct indicates criminal activity. *See Terry*, 392 U.S. at 21-22.

Lloyd had no prior knowledge of Riley or his possible involvement in any criminal activity. Lloyd testified that Riley was in a high crime area late at night. When Riley exited his vehicle and saw Lloyd, Riley turned to face his own vehicle, made a motion toward the front of his waistband, and closed the door to his vehicle. The officer testified that Riley was wearing a jacket and that he could not see Riley's waistband because Riley had his back turned to the officer. Lloyd also admitted that Riley may have been tucking his shirt in his pants or doing a number of other things.

We find that these facts bear a striking resemblance to two cases recently decided by this Court. In *Smith v. Commonwealth*, 12 Va. App. 1100, 407 S.E.2d 49 (1991), a Richmond police officer saw Smith in a playground described as an area of significant drug activity. The officer testified that Smith quickly thrust his hand into his pants when he saw the officer's unmarked car approach. The officer stopped, approached the man and tried to search him. As the man struggled with the officer, the officer grabbed the front of the man's pants and pulled them open, finding a bag of cocaine. *Id.* at 1102, 407 S.E.2d at 51. The officer had no information that Smith was involved in criminal activity and had not seen Smith engage in criminal activity. *Id.* at 1104, 407 S.E.2d at 52. This Court held that the officer's observations were insufficient to justify either an investigatory stop or a search of Smith upon stopping him. *Id.*

Similarly, in *Goodwin v. Commonwealth*, 11 Va. App. 363, 398 S.E.2d 690 (1990), two Richmond police officers stopped Goodwin when they saw him emerge from an open space behind an apartment in a neighborhood they considered a "high crime" area. Goodwin "jamm[ed]" his hands into his coat pocket upon seeing the officers. *Id.* at 365, 398 S.E.2d at 691. While the officers testified that they did not actually see anything in Goodwin's hands, they were concerned that Goodwin may have shoved a weapon into his pocket. *Id.* When the officers stopped Goodwin, he reached into his pocket to retrieve a knife that he told the police he had. The officers grabbed the knife, arrested Goodwin, and

found cocaine when they searched him. *Id*. This Court held that the police lacked adequate grounds to stop Goodwin. *Id*. at 367, 398 S.E.2d at 692. *See also Moss v. Commonwealth*, 7 Va. App. 305, 308, 373 S.E.2d 170, 172 (1988) (an officer's suspicions must be based on something more than a hunch).

■ The Commonwealth argues on this appeal that "[a]reas that have experienced a rash of criminal activity, give color to conduct occurring in that area which might not otherwise arouse suspicion." In *Smith*, *Goodwin*, and in this case, the officers described the locations of the stops as high crime areas. Our Supreme Court has cogently rejected the notion that the reputation of a general area is a permissible means of proving "guilt by association." "It cannot be reasonably inferred from the mere presence of the defendant at the street intersection and the intersection's reputation as a place for trafficking in drugs that [defendant] was engaged in the illegal activity of drug distribution over the period of time defendant was observed by the detectives." *Smith v. Commonwealth*, 217 Va. 336, 337, 228 S.E.2d 562, 562-63 (1976). Likewise, the United States Supreme Court has consistently stated that the characteristic of an area cannot serve to impute criminal activity to a person by virtue of that person's presence in the area. *See Brown*, 443 U.S. at 52 ("The fact that appellant was in a neighborhood frequented by drug users standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct"); *Sibron v. New York*, 392 U.S. 40, 62 (1968)("The inference that persons who talk to narcotic addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security").

> [T]housands of citizens live and go about their legitimate day-to-day activities in areas which surface . . . in court testimony, as being high crime neighborhoods. The fact that the events here at issue took place at or near an allegedly "high narcotics activity" area does not objectively lend any sinister connotation to facts that are innocent on their face.

*Smith v. United States*, 558 A.2d 312, 316 (D.C. App. 1989). In short, the general character of a neighborhood does not supply "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449

U.S. 411, 417-18 (1981).

Lloyd had no particularized knowledge of Riley's involvement in any criminal activity. In light of the circumstances upon which this stop was predicated and our decisions in *Smith, Goodwin* and *Moss*, we hold that Lloyd's observations and suspicions were insufficient to justify an investigatory stop. Therefore, the subsequent search was invalid and evidence resulting from that search should have been suppressed.

## III.

■ A judgment of conviction will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it. Code § 8.01-680. The record indicates that the Commonwealth stipulated to the admissibility of a document offered by Riley from the City of New York Department of Corrections which showed that Riley was incarcerated within the New York correctional system on November 14, 1989. When opposing counsel permits the introduction of a writing without objecting to the absence of any proof of due execution or authenticity, proof of its authenticity is waived. *See Harnsberger v. Cochran*, 82 Va. 727, 731, 1 S.E. 120, 122 (1887); *James River v. Littlejohn*, 59 Va. (18 Gratt.) 56, 80 (1867); *Lyle v. Higginbotham*, 37 Va. (10 Leigh) 67, 77 (1839); *see also* 7 J. Wigmore, *Wigmore on Evidence* § 2132, at 716 (Chadbourn rev. 1978).

While we must consider the evidence in the light most favorable to the Commonwealth and give to that evidence all reasonable inferences, *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975), an examination of the record reveals that no evidence supports the Commonwealth's contention that Riley willfully failed to appear in the general district court on November 14, 1989. Rather, all evidence indicates that Riley was incapable of appearing before the district court due to his incarceration in New York. Thus, Riley's conviction for feloniously, unlawfully, and willfully failing to appear in the general district court in violation of Code § 19.2-128 is plainly wrong.

For these reasons, we reverse the conviction for possession of cocaine and remand for a new trial if the Commonwealth be so advised. We reverse and dismiss the conviction for failure to appear since the Commonwealth failed to present evidence support-

ing an essential element of the crime charged.

*Reversed and remanded in part;*
*reversed and dismissed in part.*

Bray, J., and Willis, J., concurred.