COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Benton and Elder
Argued at Richmond, Virginia


NOEL FLOYD EARLEY
                                    MEMORANDUM OPINION[*] BY
v.          Record No. 2398-95-2    JUDGE LARRY G. ELDER
                                       NOVEMBER 5, 1996
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      Robert W. Duling, Judge


          Cullen D. Seltzer, Assistant Public Defender
          (David J. Johnson, Public Defender, on
          briefs), for appellant.

          Marla Graff Decker, Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.


     Noel F. Earley (appellant) appeals his conviction of one

count of possession of cocaine with intent to distribute.  He

contends that the trial court erroneously denied his motion to

suppress a plastic bag of cocaine obtained when Officer O'Kleasky

of the Richmond police patted the sleeve of his coat during a

sweep of a known open air drug market.  He argues that Officer

O'Kleasky lacked reasonable suspicion that he was either

committing a crime or armed at the time Officer O'Kleasky seized

him and patted his sleeve for weapons.[1]  For the reasons that

follow, we affirm appellant's conviction.

---

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

     [1]The Commonwealth conceded at oral argument that appellant
was seized before the bag of cocaine was knocked from his sleeve.
 Therefore, we only consider whether reasonable suspicion existed
for the seizure and pat-down.

On appeal, we review determinations of reasonable suspicion de novo and findings of historical fact for clear error. Ornelas v. United States, ___ U.S. ___, ___, 116 S. Ct. 1657, 1663, 134 L.Ed.2d 911 (1996). We also give due weight to inferences drawn from historical facts by trial judges and law enforcement officials. Id.

It is well settled that a police officer may conduct a pat-down search of a suspect's outer clothing, if he can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably lead him to conclude, in light of his experience, that criminal activity may be afoot and that the suspect may be armed and presently dangerous." Thompson v. Commonwealth, 16 Va. App. 478, 481, 431 S.E.2d 72, 74 (1993) (quoting Lansdown v. Commonwealth, 226 Va. 204, 209, 308 S.E.2d 106, 110 (1983), cert. denied, 456 U.S. 1104, 104 S. Ct. 1604, 80 L.Ed.2d 134 (1984) (quoting Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L.Ed.2d 889 (1968))). Whether sufficient cause exists to warrant a stop and frisk is determined by the totality of the circumstances. Smith v. Commonwealth, 12 Va. App. 1100, 1102, 407 S.E.2d 49, 51 (1991) (citing United States v. Cortez, 449 U.S. 411, 417, S. Ct. 690, 695, 66 L.Ed.2d 621 (1981)). In examining the circumstances, "we recognize that a trained police officer may be able 'to perceive and articulate meaning to given conduct which would be wholly innocent to the untrained observer." Id. (citations omitted).

The United States Supreme Court has described the process that law officers undertake when assessing the bases for their suspicion:

> The analysis proceeds with various objective observations, information from police reports if such are available, and consideration of the modes or patterns of operation of certain kinds of law breakers. From these data, a trained officer draws inferences and makes deductions -- inferences and deductions that might well elude an untrained person.
>
> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense conclusions about human behavior; jurors as factfinders are permitted to do the same--and so are law enforcement officers.

Cortez, 449 U.S. at 418, 101 S. Ct. at 695.

In this case, we hold that Officer O'Kleasky had reasonable articulable suspicion that appellant may have been engaged in criminal activity and was armed. Consequently, a Terry stop and a pat-down of appellant was justified. The street corner on which appellant was standing with two other males was known as an active open air drug market and was the site of many shootings. Officer O'Kleasky and his fellow officers arrived to conduct a routine sweep of the street corner to search for drugs and weapons. As they arrived at the corner, the officers watched appellant quickly pull his left fist up into the sleeve of his coat and start making a twisting motion within his sleeve. Appellant remained at the corner and made no effort to leave after the two other males began walking up the street. The

officers knew appellant had a history of violent behavior that included convictions for shooting a firearm into an occupied dwelling and assault. After Officer O'Kleasky twice asked appellant to show him his hand, appellant complied while still apparently manipulating an object to fall lower within his sleeve. Officer O'Kleasky then said to appellant, "put your arm down." Appellant put his arm down, but it still appeared that he was attempting to keep some object from falling out of his sleeve. Concerned for the safety of himself and the other officers, Officer O'Kleasky reached over and patted appellant one time on his sleeve to check for firearms, causing the plastic bag of cocaine to fall from appellant's sleeve.

While each of these circumstances standing alone would not justify the seizure and search of appellant, when viewed as a whole, Officer O'Kleasky had reasonable articulable suspicion to seize and pat-down appellant. The additional circumstances of this case distinguish it from those cases in which we held that a police officer witnessing a peculiar hand movement by a person in a high crime area, without more, lacks reasonable suspicion justifying a stop and frisk. Riley v. Commonwealth, 13 Va. App. 494, 497-99, 412 S.E.2d 724, 726-27; Smith, 12 Va. App. at 1104, 407 S.E.2d at 52; Goodwin v. Commonwealth, 11 Va. App. 363, 367, 398 S.E.2d 690, 692 (1990). Furthermore, the officers were in an established open air drug market known for shootings conducting a sweep for weapons and drugs. We have recognized that searches

for narcotics "may give rise to sudden violence or frantic efforts to conceal or destroy evidence" and that it is reasonable for officers to infer that such situations are dangerous. Williams v. Commonwealth, 4 Va. App. 53, 67, 354 S.E.2d 79, 87 (1987) (quoting Michigan v. Summers, 452 U.S. 692, 702, 101 S. Ct. 2587, 2594, 69 L.Ed.2d 340 (1981)).

For the foregoing reasons, we affirm the conviction.

Affirmed.

Benton, J., dissenting.


Noel F. Earley was standing on the sidewalk at 2:50 in the afternoon when the police officers arrived at "a corner that [the officers] routinely check during [their] tour" of that neighborhood. No evidence in this record tended to prove that the officers had a reasonable suspicion that Earley was engaged in criminal activity. See Terry v. Ohio, 392 U.S. 1, 30 (1968). For the reasons cogently stated by this Court in Riley v. Commonwealth, 13 Va. App. 494, 412 S.E.2d 724 (1992); Smith v. Commonwealth, 12 Va. App. 1100, 407 S.E.2d 49 (1991); and Goodwin v. Commonwealth, 11 Va. App. 363, 398 S.E.2d 690 (1990), I would hold that the police unlawfully stopped and searched Earley. See also Smith v. Commonwealth, 217 Va. 336, 228 S.E.2d 562 (1976).