COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Annunziata and Senior Judge Cole
Argued at Richmond, Virginia


LEON DARNELL PARKER

MEMORANDUM OPINION[*] BY
v.  Record No. 0319-96-2        JUDGE ROSEMARIE ANNUNZIATA
                                        APRIL 8, 1997
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Thomas N. Nance, Judge

Cullen D. Seltzer, Assistant Public Defender
(David J. Johnson, Public Defender, on
briefs), for appellant.

Robert H. Anderson, III, Assistant Attorney
General (James S. Gilmore, III, Attorney
General, on brief), for appellee.


Leon Darnell Parker was indicted on the charge of possession
of cocaine with intent to distribute. See Code § 18.2-248.  The
trial judge denied Parker's motion to suppress the cocaine and,
after a bench trial, found Parker guilty of possession of cocaine
in violation of Code § 18.2-250.  In this appeal, Parker contends
that the trial judge erred in denying his motion to suppress.
Because the evidence was properly admitted, we affirm the
conviction.

                            I.

The evidence proved that on July 13, 1995, Officer Michael
J. Kurisky of the Richmond Police Department was driving through
the 2100 block of Creighton Road in an area he "personally

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

consider[ed]" to be a drug market. He and two other officers, who were his passengers, observed a group of men standing next to a car with its trunk open. When the men saw the officers, someone immediately shut the trunk. The men began dispersing. The two officers exited Kurisky's vehicle.

Kurisky testified that Parker turned and placed an item in the waistband of his shorts and began walking away on the sidewalk. Kurisky put his vehicle in reverse and drove along the street until he was beside Parker. Parker looked toward the police vehicle, turned, and began walking down the sidewalk in the opposite direction. Accordingly, Kurisky reversed his direction and drove to where the other officers were with some of the other men. Parker, aware that Kurisky was following behind him, turned again, changed direction again and began walking in the direction from which he came. He then entered the "posted" property belonging to Richmond Redevelopment and Housing Authority. As Parker headed toward the apartments, Kurisky drove his vehicle approximately forty feet off the road to follow Parker. Kurisky testified he was aware that outsiders often came onto public housing property to sell illegal drugs. Kurisky also made clear the police regularly enforced the no trespassing provisions of the public housing property and frequently drove "up on the cuts" to investigate possible trespassing. Kurisky also stated that he had witnessed other individuals, as the police approached, attempt to conceal contraband, as had

appellant, in their shorts.  Kurisky exited his vehicle and asked Parker if Parker lived there.  Parker stopped walking and replied that he did not but that his friend did live there.  Kurisky asked if Parker had any drugs or guns on his person, and Parker replied that he did not.  Kurisky asked Parker if he "could pat him down."  Parker did not answer but instead raised his hands into the air.  Kurisky frisked Parker and discovered no contraband.

A second officer then approached from Parker's right-hand side and asked Parker "if he had anything in his crotch."  Parker "grabbed his basketball shorts and boxer shorts and started, in very exaggerated motions, pulling them to the side, up and down, shaking them in and out."  When Parker was finished, Kurisky could see "a pink object through the boxer shorts material" between Parker's skin and boxer shorts.  Kurisky testified that the object was approximately the shape and size of a "big jaw breaker."  Kurisky testified that he suspected the object to be crack cocaine because baggies containing cocaine are often pink, brown, or clear, and because it was "balled up in a tight little ball."  Kurisky placed his hand on the object and felt it.  He testified that it was crack cocaine.  Kurisky arrested Parker and seized the item, which was a plastic lunch bag containing 18 red ziplock baggies, each containing a substance that tested to be crack cocaine.

II.

Parker argues that when the police officer drove his vehicle up to him and questioned him, the officer unlawfully seized him. Parker asserts that the evidence obtained thereafter should have been excluded from the evidence. We disagree. Even if Kurisky's presence was intimidating to Parker, it did not constitute a seizure. See Baldwin v. Commonwealth, 243 Va. 191, 199, 413 S.E.2d 645, 649-50 (1992).

Furthermore, even assuming Parker was seized, we hold that Parker's rights were not violated when the officer approached him because the officer had a reasonable suspicion to conduct a Terry stop and pat-down search.

"To make a legal investigatory stop, an officer must possess a reasonable, articulable suspicion that 'criminal activity may be afoot.'" Buck v. Commonwealth, 20 Va. App. 298, 302, 456 S.E.2d 534, 536 (1995) (citation omitted). In Buck, police officers observed the defendant get into a car as a passenger, ride in the car around a block, and exit the vehicle only one block away from where he entered the car. See id. at 303, 456 S.E.2d at 536. When the officers approached the defendant, he put his fist near his mouth and fled. See id. This Court stated,

> [w]hen the [defendant] appeared to have put something in his mouth and fled from the officers, after they had observed him enter a car, circle the block, and then exit the car in an area known as an open drug market, they had reason to believe [defendant] had just bought or sold drugs. Therefore, the officers were justified in stopping the [defendant] to investigate his activity.

Id.

At trial, Kurisky testified that he saw Parker and the other men in an area he considers to be an open air drug market. The men looked at the officers, immediately shut the trunk of the car, and dispersed. After Kurisky saw Parker put an item in the waistband of his shorts, he followed Parker. Kurisky testified that he approached Parker because Parker was "being very evasive."

We hold that these facts would have justified a stop of Parker. See id.; see also Hatcher v. Commonwealth, 14 Va. App. 487, 490, 419 S.E.2d 256, 258 (1992) (stating that officer had reasonable suspicion after he observed "highly evasive maneuvers" by a car and appellant began to walk away after the officer activated his emergency lights). Therefore, even if Kurisky's conduct resulted in a seizure of Parker, the seizure was supported by a reasonable suspicion that Parker was engaged in illegal activity.

### III.

Parker next contends that the officer's seizure of the cocaine from his shorts was unlawful. We disagree.

To justify a warrantless seizure of an item in plain view, the Commonwealth must show that (1) the officer was "lawfully in a position to view and seize the item," and (2) it was "immediately apparent that the item may be evidence of a crime." Carson v. Commonwealth, 12 Va. App. 497, 501, 404 S.E.2d 919,

921, aff'd on reh'g en banc, 13 Va. App. 280, 410 S.E.2d 412 (1991), aff'd, 244 Va. 293, 421 S.E.2d 415 (1992).  Parker argues that the Commonwealth failed to prove that it was immediately apparent that the pink ball in his shorts was evidence of a crime.

In Carson, this Court held that the officer had probable cause to seize a two-inch straw.  See id. at 503, 404 S.E.2d at 923.  We reasoned that the "distinctive character of the straw coupled with the officer's experience 'would warrant a [person] of reasonable caution' to believe that the straw might be useful as evidence of a crime."  Id. at 502, 404 S.E.2d at 922 (citation omitted).  The "distinctive character" of the straw made it highly unlikely that it was possessed for a legitimate use.  See id.  We distinguished Harris v. Commonwealth, 241 Va. 146, 400 S.E.2d 191 (1991), where the Supreme Court held that an officer's knowledge of a possible criminal use of a film canister did not suffice because "law-abiding citizens, on a daily basis, also use film canisters to store film, which is a legitimate use."  Id. at 154, 400 S.E.2d at 196.

In this case, Kurisky testified that he was "within normal conversing distance" from Parker when he saw a pink object that was the size of a "jaw breaker" under Parker's boxers at his waist.  Kurisky stated that before he touched the object, he suspected that it was cocaine because "[p]ink baggies are often one of the colors of baggies used to package . . . crack cocaine;

- 6 -

and it being balled up in a tight little ball . . . I thought that it was [cocaine]." Kurisky stated that his suspicion was based on his training and experience because he had frequently "recovered crack cocaine packaged in large baggies--well, a large bag surrounding numerous smaller, individually wrapped ziplock baggies that are often pink in color, brown in color, or clear."

We hold that the "distinctive character" of the pink object, coupled with Parker's suspicious conduct in trying to evade police and to mislead the officer about the object concealed between appellant's skin and boxer shorts and the fact that it occurred in an area known for drugs, provided Kurisky with probable cause to seize the object from Parker's waistband.

Because the evidence was lawfully obtained, it was properly admitted at trial. Therefore, we affirm the conviction.

<u>Affirmed</u>.

Benton, J., dissenting.

I would hold that the evidence proved that the police officer lacked a reasonable articulable suspicion to seize Leon Parker.  Therefore, I dissent.

When Officer Kurisky and the other two officers saw a group of men standing around a car, they observed no activity that indicated criminal conduct was occurring.  Certainly, closing the trunk of the car was not criminal conduct.  Officer Kurisky testified that he followed Parker because he saw Parker place an "item" in the waistband of his shorts.  His testimony did not otherwise describe the item.

Driving his vehicle, Officer Kurisky then pursued Parker, who was walking on the sidewalk, and continued to pursue Parker when Parker changed directions.  When Parker walked off the sidewalk toward an apartment, Officer Kurisky drove forty feet off the street onto the land.  He then confronted Parker and began to question him.

The principle is long standing that "whenever a police officer accosts an individual and restrains [that person's] freedom to walk away, [the officer] has 'seized' that person." Terry v. Ohio, 392 U.S. 1, 16 (1968).  Thus, for purposes of the Fourth Amendment, a seizure occurs when the "circumstances . . . amount to a show of official authority such that 'a reasonable person would have believed that he was not free to leave.'" Florida v. Royer, 460 U.S. 491, 502 (1983) (quoting United States

v. Mendenhall, 446 U.S. 544, 554 (1980)).

The officer's pursuit of Parker after Parker reversed his direction and the officer's further pursuit by driving his vehicle off the roadway onto the yard was an intimidating, persistent show of authority.  This is not the passive conduct demonstrated in Baldwin v. Commonwealth, 243 Va. 191, 413 S.E.2d 645 (1992), where the police officer used his light at night and called to people in a parking lot.  See id. at 193-94, 413 S.E.2d at 646-47.  Here, the officer pursued Parker and confronted him after taking the extraordinary action of driving off the street onto the apartment grounds.  When Officer Kurisky got out of his car and questioned Parker whether he lived in the apartment and whether he had guns or weapons, Parker was seized.

The seizure was unlawful because the officer lacked a reasonable articulable suspicion to stop and frisk Parker. Officer Kurisky testified only that he "personally consider[ed] that area to be an open air drug market."  Furthermore, his testimony about the car did not establish drug activity and did not directly involve Parker.  The officer's testimony of the facts and observations that gave rise to the stop must amount to more than an "inchoate and unparticularized suspicion or 'hunch.'"  Terry, 392 U.S. at 27.  "When examining the officer's articulable reasons for stopping a person, we examine the objective reasonableness of the officer's behavior rather than the officer's subjective belief that the conduct indicates

criminal activity."  Riley v. Commonwealth, 13 Va. App. 494, 496-97, 412 S.E.2d 724, 725 (1992).  The officer did not testify as to any conduct by Parker that gave rise to a reasonable suspicion that Parker was engaged in criminal conduct.  His stop of Parker stands only upon his observation that Parker put some "item" in his pants as he walked away.  "Manifestly, this conduct falls below activity necessary to justify a reasonable suspicion that a violation of law had occurred or was occurring."  Zimmerman v. Commonwealth, 234 Va. 609, 612, 363 S.E.2d 708, 710 (1988); see also Riley, 13 Va. App. at 497-99, 412 S.E.2d at 726-27; Smith v. Commonwealth, 12 Va. App. 1100, 407 S.E.2d 49 (1991); Goodwin v. Commonwealth, 11 Va. App. 363, 398 S.E.2d 690 (1990).

Because the record proved insufficient justification for the stop that led to the discovery of the cocaine, I would reverse the trial judge's refusal to suppress the evidence.