BENTON, Judge,
with whom ELDER, J., joins in Part I, dissenting.
I.
“[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is *717 no probable cause to make an arrest.” Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).
The Fourth Amendment, of course, “applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest. ‘[Wjhenever a police officer accosts an individual and restrains his freedom to walk away, he has “seized” that person,’ and the Fourth Amendment requires that the seizure be ‘reasonable.’ ”
Brown v. Texas, 443 U.S. 47, 50, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979) (citations omitted). “The controlling principle here is that an investigative stop, amounting to a fourth amendment seizure, must be ‘supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity.’ ” United States v. Gooding, 695 F.2d 78, 82 (4th Cir.1982) (quoting Reid v. Georgia, 448 U.S. 438, 440, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980)).
The police officers who seized Ricky Christian had no reasonable or articulable suspicion that he was engaged in criminal activity. Indeed, Officer Lecroy gave the following reason for detaining Christian:
The reason that I did what I did, was because part of my job that evening was to prevent anyone from getting hurt, and to apprehend suspects who may have purchased illegal narcotics.
When we have undercover officers out in the parking lot which are conducting sales of illegal drugs, imitation illegal drugs, my concern is for their safety along with anyone else that I may be working with if I — and any other people who may be in the area.
When I heard that a man had a gun in the middle of a high drug area which — which we wouldn’t have been there if it wasn’t a high drug area, then I’m going to take it from him and find out what his purpose is for being there.
The officer testified, however, that Christian did not purchase any drugs and was not suspected of drug activity. The officer had no indication that Christian was or had been engaged in criminal activity. He had no objective basis to believe that *718 Christian, who was going to his home, “may have purchased illegal narcotics” from the undercover officers. Moreover, it is not illegal in Virginia to carry a gun if one is lawfully permitted to do so and if the gun is not held in a reckless or threatening manner. See Code § 18.2-56.1 and Code § 18.2-282.
Christian lived in one of the apartments in the building where he was arrested. Christian did not approach the officers who were selling the imitation cocaine, and he posed no threat to them. The evidence merely proved that he entered the apartment building where he lived. Moreover, no evidence proved that Christian was going to the laundry room or posed a threat to the officers who were waiting in the laundry room. Those officers were out of sight of persons who may have been using the apartment’s entrance and lobby. Indeed, Officer Lecroy left the laundry room to confront Christian. A conclusion that Christian posed a threat to the officers or anyone else would be based on “sheer speculation, unsupported by the evidence.” Tucker v. Life Ins. Co. of Va., 228 Va. 55, 62, 321 S.E.2d 78, 82-83 (1984).
The only objective facts upon which the police relied to seize Christian were that he was carrying a weapon in public in “a high drug area.” However, carrying an openly displayed firearm in public is not illegal in Virginia. Indeed, if a person desires to transport a firearm from his automobile to his residence, the firearm must be openly displayed. Cf. Code § 18.2-308 (prohibiting generally the carrying of concealed weapons). The record contains no indication that Christian was “brandishing” a firearm in violation of Code § 18.2-282(A). In a state that permits ownership and open display of firearms, the mere fact that a person may be armed does not provide a reason to suspect that the person is violating the law.
Moreover, “the characteristic of an area cannot serve to impute criminal activity to a person by virtue of that person’s presence in the area.” Riley v. Commonwealth, 13 Va.App. 494, 498-99, 412 S.E.2d 724, 726 (1992). In Brown, the United *719 States Supreme Court has also noted that a neighborhood’s characteristic tells nothing about the conduct of the person in it.
The flaw in the State’s case is that none of the circumstances preceding the officers’ detention of appellant justified a reasonable suspicion that he was involved in criminal conduct. Officer Venegas testified at appellant’s trial that the situation in the alley “looked suspicious,” but he was unable to point to any facts supporting that conclusion. There is no indication in the record that it was unusual for people to be in the alley. The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct. In short, the appellant’s activity was no different from the activity of other pedestrians in that neighborhood. When pressed, Officer Venegas acknowledged that the only reason he stopped appellant was to ascertain his identity. The record suggests an understandable desire to assert a police presence; however, that purpose does not negate Fourth Amendment guarantees.
Brown, 443 U.S. at 51-52, 99 S.Ct. at 2641 (footnote omitted); see also Sibron v. New York, 392 U.S. 40, 62, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968) (holding that “[t]he inference that persons who talk to narcotic addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual’s personal security”).
“It cannot be reasonably inferred from the mere presence of the defendant at the street intersection and the intersection’s reputation as a place for trafficking in drugs that [defendant] was engaged in the illegal activity of drug distribution over the period of time defendant was observed by the detectives.”
^ ^
“[Thousands of citizens live and go about their legitimate day-to-day activities in areas which surface ... in court testimony, as being high crime neighborhoods. The fact *720 that the events here at issue took place at or near an allegedly ‘high narcotics activity’ area does not objectively lend any sinister connotation of facts that are innocent on their face.”
Riley, 13 Va.App. at 498, 412 S.E.2d at 726-27 (citations omitted).
The recent case Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), reaffirmed the basic principles embodied in Terry and held that “[hjeadlong flight” in an area known for criminal activity gave the police reasonable suspicion to search a suspect. 528 U.S. at 124, 120 S.Ct. at 676. Nevertheless, the Court also stated that “it was not merely [the suspect’s] presence in an area of heavy narcotics trafficking that aroused the officers’ suspicion.” Id. Such presence, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. Id. In this case, Christian’s presence in a high crime neighborhood was the only cause for suspicion about his activities. As stated earlier, his open possession of the firearm was proof only of lawful compliance with the Virginia statute. When the circumstances objectively establish perfectly lawful activity, no cause exists for reasonable suspicion of criminal activity.
To make a Terry stop, “the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.” United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). In both Terry and Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the police officers were able to articulate a particularized suspicion that the person was engaged in criminal activity. See Terry, 392 U.S. at 6-7, 88 S.Ct. at 1872; Williams, 407 U.S. at 144-48, 92 S.Ct. at 1922-24.
The evidence does not prove that Christian was engaged in criminal activity or was “presently dangerous” to the officers or any other person. See Terry, 392 U.S. at 24, 88 S.Ct. at 1881. Thus, Officer Lecroy was not justified in his “belief that his safety or that of others was in danger.” Id. at 27, 88 S.Ct. *721 at 1883. For these reasons, I would hold that the trial judge erred in refusing to suppress the evidence.
II.
Although the evidence was sufficient to prove possession of cocaine, it was insufficient to establish an intent to distribute beyond a reasonable doubt. Therefore, I dissent.
“Possession with intent to distribute is a crime which requires ‘an act coupled with a specific intent.’” Stanley v. Commonwealth, 12 Va.App. 867, 869, 407 S.E.2d 13, 15 (1991) (en banc) (citation omitted). “It is elementary that where, as here, an indictment charges an offense which consists of an act combined with a particular intent, proof of the intent is essential to conviction.” Patterson v. Commonwealth, 215 Va. 698, 699, 213 S.E.2d 752, 753 (1975). The Commonwealth must prove specific intent, an element of the charged offense, beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979); In re Winship, 397 U.S. 358, 363, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Thus, “[ejxistence of the intent ... cannot be based upon surmise or speculation.” Patterson, 215 Va. at 699, 213 S.E.2d at 753.
When the Commonwealth’s evidence is wholly circumstantial, “ ‘all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.’” Dukes v. Commonwealth, 227 Va. 119, 122, 313 S.E.2d 382, 383 (1984) (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976)). “Where inferences are relied upon to establish guilt, they must point to guilt so clearly that any other conclusion would be inconsistent therewith.” Dotson v. Commonwealth, 171 Va. 514, 518, 199 S.E. 471, 473 (1938).
The principle is well established in Virginia that a relatively small quantity of cocaine warrants the inference that an accused possessed it for personal use. See Dukes, 227 Va. at 122-23, 313 S.E.2d at 383-84. The police seized only 2.3 grams of cocaine from Christian’s person. No other evidence *722 indicated an intent to distribute. “The mode of packaging [of the cocaine] and the way the [package was] hidden are as consistent with possession for personal use as they are with intent to distribute.” Id. at 123, 313 S.E.2d at 384. The cocaine was not divided into individual and separate packages.
Moreover, Christian made no statements and committed no acts that proved he intended to distribute the cocaine. Christian had entered the building where he lived when the officer seized him. The police officer testified that Christian said he purchased an “eight-ball.” The Commonwealth’s evidence established that an eight-ball was approximately 3.5 grams and that if Christian began with an eight-ball, he was “missing” only a little over a gram of cocaine. In addition, the Commonwealth’s own expert testified that it would be impossible to obtain $900 from the sale of a little over a gram of cocaine.
Christian’s wife testified that the day Christian was arrested (October 4, 1996), she had driven him to the bank to cash his paycheck of “about seven hundred dollars.” Christian testified as follows about his check:
I cashed my check. My check was like, seven hundred and some dollars. We worked seven days on — thirteen days on and four days off. We worked ten-hour shifts a day. So I cashed my check. I asked the teller not to give me any hundred dollar bills and as few fifties as possible. I arranged my money.
That testimony was not contradicted. The probation officer testified that Christian reported to him on September 11, that he had gotten a new job with the railroad company and showed him a paystub with a “net pay [of] 251.28” for the week ending “9-7-96.”
Thus, only through speculation could we conclude that a connection exists between Christian’s money and his intention regarding the cocaine. Likewise, proof that Christian possessed a pager, a very common device in our society, does not establish any intent regarding the cocaine. “[Circumstances of suspicion, no matter how grave or strong, are not proof of *723 guilt sufficient to support a verdict of guilty.” Clodfelter v. Commonwealth, 218 Va. 619, 623, 238 S.E.2d 820, 822 (1977).
For these reasons, I would also hold that the evidence failed to prove beyond a reasonable doubt that Christian possessed the cocaine with the intent to distribute.