COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Frank and Kelsey
Argued at Salem, Virginia


DARRIN DOUGLAS THOMAS
                                                MEMORANDUM OPINION[*] BY
v.        Record No. 1834-06-3              JUDGE ROBERT P. FRANK
                                                    OCTOBER 16, 2007
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                            David A. Melesco, Judge

        Jason S. Eisner, Assistant Public Defender (Officer of the Public
        Defender, on brief), for appellant.

        Joanne V. Frye, Assistant Attorney General (Robert F. McDonnell,
        Attorney General; Karri B. Atwood, Assistant Attorney General, on
        brief), for appellee.


        Darrin Douglas Thomas, appellant, was convicted of possession of cocaine in violation of

Code § 18.2-250.  On appeal, he contends the trial court erred in denying his motion to suppress, as

the police officer did not have reasonable suspicion to detain him nor did he give consent to the

search.  For the reasons that follow, we affirm.

                                    BACKGROUND

        At 9:30 p.m. on December 30, 2005, Officer Wyatt of the Danville Police Department was

on patrol near Chatelaine Avenue and Hughes Street, which was known to the officer as a

"high-drug area."  Officer Wyatt had personally made five or six drug arrests in that area.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Officer Wyatt noticed a vehicle parked in front of 394 Chatelaine Avenue, across the street from a residence, 399 Chatelaine Avenue, that had been the subject of numerous search warrants.[1] Appellant walked from the area of 399 Chatelaine Avenue, crossed the street, and approached the driver's side window of the parked car.

Based on Officer Wyatt's experience and knowledge of illegal drug sales in the area, he believed a drug transaction was about to occur. Officer Wyatt exited his vehicle and began to approach the parked vehicle. When appellant noticed the officer approaching, appellant began to walk away at a "fast pace" toward the front of the parked vehicle. Appellant had only been at the driver's side window for a matter of seconds before he saw the officer and began to walk away rapidly.

As appellant walked away, Officer Wyatt asked appellant to stop but appellant continued walking. "He started to put his hands in his jacket pocket . . . digging pretty hard in his jacket pocket." Officer Wyatt was concerned appellant might be reaching for a weapon. Appellant looked over his shoulder and looked back at the officer. Again, Officer Wyatt asked appellant to stop, and appellant continued walking. Officer Wyatt then pointed his taser at appellant and told appellant to "get on the ground." Appellant complied. The officer patted down appellant while he was on the ground and found no weapon. At no time did Officer Wyatt discharge the taser.

Officer Wyatt holstered the taser. At the suppression hearing, he characterized appellant as "calm" and "cooperative." The officer then asked appellant, while he was still lying on the ground, if he had any drugs on him. Appellant replied in the negative. Appellant then consented to a search, which revealed cocaine.[2]

---

[1] Appellant testified at the hearing on his motion to suppress that 399 Chatelaine Avenue was a "well known drug house."

[2] During his testimony, appellant denied consenting to a search.

In denying the motion to suppress, the trial court found that the officer's testimony that appellant consented to the search was credible. The trial court further found the officer had reasonable suspicion to detain appellant.

Appellant then entered a conditional plea of guilty pursuant to Code § 19.2-254, preserving for appeal the alleged violation of appellant's Fourth Amendment rights.

This appeal follows:

## ANALYSIS

Appellant contends the trial court erred in not granting his motion to suppress.

While "the Commonwealth has the burden of proving the legitimacy of a warrantless search and seizure," Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989), the defendant must show that the trial court's denial of his suppression motion, when the evidence is considered in the light most favorable to the prosecution, was reversible error. Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002).

### Seizure

Appellant first contends the officer seized him as soon as the officer exited his vehicle and approached appellant, brandishing his taser.

This argument is premised on appellant's testimony that Officer Wyatt drew his taser on appellant as soon as the officer exited his police unit. However, Officer Wyatt testified that he did not draw his taser from his holster until appellant walked away and was "digging" in his pockets.

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). The trial court expressly determined Officer Wyatt's testimony to be more credible, and was thus entitled to believe Officer Wyatt's rendition of the facts. "In its role of judging witness credibility, the fact

finder is entitled to disbelieve the self-serving testimony of the accused." Marable v.

Commonwealth, 27 Va. App. 505, 509, 500 S.E.2d 233, 235 (1998).

Alternatively, appellant contends that the officer had no reasonable suspicion to seize him when appellant was ordered down on the ground.

"The right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. "[S]earches and seizures 'conducted outside the judicial process . . . are *per se* unreasonable under the Fourth Amendment -- subject only to a few specifically established and well delineated exceptions.'" Minnesota v. Dickerson, 508 U.S. 366, 372 (1993) (quoting Thompson v. Louisiana, 469 U.S. 17, 19-20 (1984)). One such exception involves a detention and frisk for weapons under the authority of Terry v. Ohio, 392 U.S. 1 (1968).

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, . . . and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

Terry, 392 U.S. at 30.

To justify such action, a police officer must have a "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, 392 U.S. at 30). "Actual proof that criminal activity is afoot is not necessary." Harmon v. Commonwealth, 15 Va. App. 440, 444, 425 S.E.2d 77, 79 (1992). Consequently, "[a]n investigatory stop under Terry anticipates that some innocent people may be stopped. Nevertheless, it is a lawful stop designed to permit an officer with reasonable suspicion of criminal activity to quickly confirm or dispel that suspicion." Davis v. Commonwealth, 35

Va. App. 533, 539, 546 S.E.2d 252, 255 (2001) (citing Illinois v. Wardlow, 528 U.S. 119, 126 (2000)).

A reasonable suspicion justifying an investigatory stop is "something 'more than an inchoate and unparticularized suspicion or hunch of criminal activity,'" but "something less than probable cause." Jackson v. Commonwealth, 267 Va. 666, 673, 594 S.E.2d 595, 598 (2004) (quoting Wardlow, 528 U.S. at 124). However, "[t]here are no bright line rules to follow when determining whether a reasonable and articulable suspicion exists to justify an investigatory stop. Instead, the courts must consider 'the totality of the circumstances--the whole picture.'" Reel v. Commonwealth, 31 Va. App. 262, 266, 522 S.E.2d 881, 883 (2000) (quoting Hoye v. Commonwealth, 18 Va. App. 132, 135, 442 S.E.2d 404, 406 (1994)).

The question thus presented under this objective standard is whether "'the facts available to the officer at the moment of the seizure . . . warrant a man of reasonable caution in the belief that the action taken was appropriate.'" Iglesias v. Commonwealth, 7 Va. App. 93, 102, 372 S.E.2d 170, 175 (1988) (quoting Terry, 392 U.S. at 21-22).

It is clear that no seizure occurred until appellant had lain down on the ground. Prior to that, despite Officer Wyatt's demand for appellant to stop, and despite Officer Wyatt's brandishing of a taser, appellant failed to submit to the officer's demands. "In order for a seizure to occur, an individual must be under some physical restraint by an officer or have submitted to the show of police authority." Thomas v. Commonwealth, 24 Va. App. 49, 54, 480 S.E.2d 135, 137 (1997) (*en banc*) (citing California v. Hodari D., 499 U.S. 621, 628 (1991)). An encounter between a police officer and a citizen becomes a seizure for Fourth Amendment purposes "'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave,'" Baldwin v. Commonwealth, 243 Va. 191, 196, 413 S.E.2d 645, 648 (1992) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)),

because the citizen's freedom of movement is restricted by the use of physical force or by a show of authority, Hodari D., 499 U.S. at 626-27.

Appellant argues that our analysis should be guided by Riley v. Commonwealth, 13 Va. App. 494, 412 S.E.2d 724 (1992), Smith v. Commonwealth, 12 Va. App. 1100, 407 S.E.2d 49 (1991), and Goodwin v. Commonwealth, 11 Va. App. 363, 398 S.E.2d 690 (1990).

In Riley, the defendant was seized solely because he made a "motion to his waistband" and was found in a high-crime area late at night. Riley, 13 Va. App. at 497, 412 S.E.2d at 726. In Smith, the defendant, in a high-crime area, suddenly thrust "something" into his pants as the officer's unmarked police unit approached. Smith, 12 Va. App. at 1102, 407 S.E.2d at 51. In Goodwin, the defendant, in a high-crime area, jammed his hands into his coat pocket upon seeing the police. Goodwin, 11 Va. App. at 367, 398 S.E.2d at 692.[3] In Riley, Smith, and Goodwin, the defendants, while in a high-crime area, merely placed their hands in their clothing; nothing indicated the defendants were engaged in any criminal activity.[4] In each case, this Court found there was no reasonable suspicion to seize the defendants.

This is not a case where appellant merely placed his hands in his pockets while in a high-crime area. Indeed, the facts of the instant case are indistinguishable from those present in Whitfield v. Commonwealth, 265 Va. 358, 576 S.E.2d 463 (2003). There, a police officer on patrol late at night in a high-crime area saw the defendant, dressed entirely in black, whom he believed was trespassing on private property. Id. at 360, 576 S.E.2d at 464. When the officer shined a spotlight on the defendant, he turned and ran away. Id. Officers pursued and detained

---

[3] In Goodwin, this Court noted specifically that the defendant "did not try to avoid or flee from the police" and that "the police had no information . . . suggesting that [the defendant] was involved in criminal activity." Id.

[4] As this Court noted in Riley, 13 Va. App. 494, 412 S.E.2d 724, the mere presence of the defendant in a high-crime area cannot, by itself, supply "'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" Id. at 498, 412 S.E.2d at 727 (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)).

the defendant, who at that time was standing with his hands in his pockets. Id. The Court held that "[t]he characteristics of the area and the defendant's conduct, including his unprovoked flight, justified the stop, and further investigation." Id. at 362, 576 S.E.2d at 465.

Here, appellant was seen in a high-crime area, walking from the vicinity of a known drug house toward a car parked across the street. As Officer Wyatt approached, appellant walked away from the car at a fast pace, despite the fact that he had only been at the car window a few seconds. Based on Officer Wyatt's experience, he believed he observed the beginning of a drug sale. As appellant walked away, he was digging in his pocket, which caused Officer Wyatt to believe appellant was reaching for a weapon. Appellant failed to heed the officer's repeated demands to stop.

"'[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion.'" Id. (quoting Wardlow, 528 U.S. at 124). When appellant walked away from the officer at a quick pace and ignored the officer's commands to stop, this evasive conduct, while falling short of "headlong flight," "would suggest culpability to a reasonable officer." United States v. Humphries, 372 F.3d 653, 657, 660 (4th Cir. 2004). Thus, based on the totality of the circumstances, we conclude that Officer Wyatt had reasonable suspicion to believe that criminal activity was afoot.

### Consent

Appellant next contends the trial court erred in finding he consented to the search since appellant testified he did not consent. Alternatively, appellant argues that his consent was involuntary and coerced since Officer Wyatt was pointing the taser at him when he consented.

The Commonwealth bears the burden of demonstrating that an individual's consent was freely and voluntarily given. Lowe v. Commonwealth, 218 Va. 670, 678, 239 S.E.2d 112, 117 (1977). Whether a particular consent was "'voluntary or was the product of duress or coercion,

express or implied, is a question of fact to be determined from the totality of all the circumstances.'" Commonwealth v. Rice, 28 Va. App. 374, 378, 504 S.E.2d 877, 879 (1998) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)).

The trier of fact is not required to accept a witness' testimony, but instead is free to "rely on it in whole, in part, or reject it completely." Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991). The determination of witness credibility is a matter solely for the fact finder to determine. Sandoval, 20 Va. App. at 138, 455 S.E.2d at 732.

Contrary to appellant's testimony at the motion to suppress, Officer Wyatt testified appellant did consent to a search of his person. The trial court, in its discretion, determined that Officer Wyatt's testimony was credible, and chose to reject the testimony of appellant as to whether or not he consented to the search.

Further, Officer Wyatt testified that he had holstered the taser prior to patting down appellant and prior to asking for permission to search.[5] Wyatt characterized appellant as "calm" and "cooperative" when the consent was given, a state of mind inconsistent with being afraid of the taser. Again, the trial court accepted the officer's testimony and rejected the testimony of appellant.

The evidence supports the trial court's finding that appellant's consent to search his person was freely and voluntarily given.

CONCLUSION

We find that Officer Wyatt had reasonable suspicion to believe that appellant was engaged in criminal activity, and thus could lawfully detain appellant in order to confirm or dispel those suspicions. We also hold that the trial court did not err in finding that appellant

---

[5] Appellant's own testimony at the motion to suppress belies his contention that Officer Wyatt was pointing the taser at him when he consented, as appellant testified that Officer Wyatt had holstered the taser before placing handcuffs on him and before searching him.

consented to the search of his person.  We affirm the trial court's denial of the motion to suppress and affirm the conviction.

Affirmed.