COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Frank and Haley
Argued at Chesapeake, Virginia


TEON DELVON GARLAND

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1272-08-1              JUDGE JAMES W. HALEY, JR.
                                                         MAY 12, 2009
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                              Dean W. Sword, Jr., Judge

          Ali T. Sprinkle (Sprinkle & Sprinkle, on brief), for appellant.

          Gregory W. Franklin, Assistant Attorney General (Robert F.
          McDonnell, Attorney General, on brief), for appellee.


        The trial court convicted Teon Delvon Garland ("Garland") of possessing with the intent

to distribute more than one-half ounce of marijuana in violation of Code § 18.2-248.1.

On appeal, he argues that the trial court erred in denying his motion to suppress evidence of the

marijuana because the police discovered the marijuana as a result of an unreasonable search of

his pants.  Because the police discovered the marijuana in a search that was not supported by

probable cause that the pants contained contraband or evidence of a crime, the trial court erred in

denying Garland's motion to suppress.  We reverse his conviction and remand to the circuit court

for further proceedings.

                                            FACTS

        On May 4, 2007, Officers Ross and Clinton of the Portsmouth Police Department came to

Garland's girlfriend's apartment to investigate a possible domestic dispute.  Officer Ross

testified that the apartment was located in a part of the City where crime and drugs were

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

common. When they arrived, Garland's girlfriend answered the door and told them that she wanted Garland to leave. Garland was in one of the bedrooms, on the bed, wearing boxer shorts. The details of the police investigation into the reported domestic dispute do not appear in the record. So we do not know what dispelled the police officers' suspicions, but each police officer testified that they concluded that no domestic assault had occurred. According to Officer Ross, Garland also said that, "there were drugs in the house." It was after Garland made this statement that the police told him that he needed to leave the house in accordance with his girlfriend's wishes. Officer Ross testified that Garland only needed to be dressed before he leave.

> Q: Did Mr. Garland leave at that point?
>
> A: He was wearing boxer shorts.
>
> Q: What happened at that point?
>
> A: Well, during my course of talking to him and the whole time we're there, he repeatedly tried to leave the room to go get his pants. I had to tell him to stay on the bed because I was running his information checking for warrants before he left. So at that time he said my pants are in the other room, the other bedroom, which is right over to the right. At that point I was like okay, I'll go get them. I went to the other room. There was only – there's another bed, and right beside the bed was a pair of jeans. I picked up the jeans, brought them back into the bedroom. Prior to bringing them in there, I did a pat-down just to make sure there were no weapons inside the pants.

In conducting the search of Garland's pants, Officer Ross felt what he believed to be bags of marijuana in the right front pocket. Officer Ross pulled the objects out, and discovered fourteen small bags of marijuana. Ross brought the pants back to the room where Garland was waiting with Officer Clinton and, without telling Garland about what he had found in the pants, asked Garland whether the pants were his. Garland replied that they were. Though testifying that he searched the pants to make sure there were no weapons inside, Officer Ross also testified as follows:

Q:     Had Mr. Garland ever threatened anyone or given you any indication that he had a weapon?

A:     No, but it's a high drug, high crime area. I myself have arrested several individuals with weapons and drugs at the same time.

Q:     You were inside this apartment at 1116 Virginia Avenue. Is that correct?

A:     Correct.

Q:     There had been no indication from this call that there were any weapons involved. Is that correct?

A:     That's correct.

In the circuit court, Garland made a pretrial motion to suppress the marijuana evidence, which the circuit court denied. In denying the motion, the trial judge stated:

THE COURT: What we have is a situation where the police are called for – I never understood it was a domestic assault. Both officers, according to the notes I wrote, said they went there on a domestic dispute. I guess domestic disputes can cover a wide variety of things. And when they got there maybe there was some suggestion, you certainly could infer that, although it's not significant or important to the decision we have to come to, but you could infer that maybe the lady, whatever her name was, I'm not sure it even came out, had suggested that there was an assault, but the investigation proved that there was no basis for that, at least what the police officers saw, felt there was no basis for it. But, apparently the lady who was the occupant of the apartment wanted this gentleman to leave, and I too agree that, while it might not be illegal, it's probably not the sort of thing one would want the police department to do is to pitch somebody out of an apartment in their underwear. I guess you could do it but it's just not the sort of thing that one would normally expect to occur, and Mr. Garland quite reasonably asked for his pants before he left the apartment.

And then the question I have to answer, which is the significant part of the issue, is was it reasonable for the police officers, or Officer Ross, to go get the pants and check them out before he gave them back to Mr. Garland. I suppose if someone is standing in their underwear, you have a pretty good idea whether they have any weapons on or about their person just by looking at them. But when you start putting on other clothing, then it becomes easier to conceal some sort of weapon. We don't have to

be talking about a big heavy nine millimeter pistol. The person could have a knife or box cutter or any of those things that are small and easily concealable in a pair of pants but which could do significant physical harm to someone.

Of course, the police officers testified that this is a high drug, high crime area, which comes as no surprise to any of us who are sitting here in the courtroom because we all deal with cases that arise in that general area all the time. It's unfortunate, but that's the reality, and so I can't come to the conclusion that it was unreasonable for the officer to give this pair of pants the quick once-over, which apparently is what he did, before he handed them to the defendant so the defendant could put them on and leave the apartment.

I don't think he was under arrest, so I really have no problem at all about the question of whether or not they were his pants, although at that point I can understand why the officer did what he did, but I don't think that required Miranda advice before it was done because I suppose the defendant could have always said no, those aren't the ones, those are somebody else's pants, and then it would be a different issue.

So I'm not going to suppress the evidence and I'll deny the motion.

## ANALYSIS

"In reviewing the denial of a motion to suppress based on the alleged violation of an individual's Fourth Amendment rights, we consider the facts in the light most favorable to the Commonwealth." Ward v. Commonwealth, 273 Va. 211, 218, 639 S.E.2d 269, 272 (2007). But we review *de novo* whether the trial court correctly applied the law to the facts. Brown v. Commonwealth, 270 Va. 414, 419, 620 S.E.2d 760, 762 (2005).

Our Fourth Amendment jurisprudence recognizes three levels of police-citizen confrontations. See Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995) (explaining that these levels are: 1) consensual encounters requiring no justification; 2) minimally intrusive investigative detentions and frisks of a suspect's outer clothing based on reasonable suspicion; and 3) highly intrusive arrests/searches requiring probable cause). Nothing

- 4 -

in the record suggests that Officer Ross sought or that Garland gave consent to search Garland's pants. Thus, the police must be able to articulate some basis or justification for the search of the pants to survive a motion to suppress. The trial judge did not specify whether reasonable suspicion or probable cause justified Officer Ross's search of Garland's pants. Instead, he relied on a more general assessment that it was reasonable for the police to search Garland's pants because there might be a weapon inside.

"An officer may conduct a pat-down search for weapons if the officer can point to specific and articulable facts which reasonably lead him to believe criminal activity may be afoot and the person subjected to the search may be armed and dangerous." Lowe v. Commonwealth, 33 Va. App. 656, 660-61, 536 S.E.2d 454, 456-57 (2000). Such pat-down searches must be carefully limited to the outer clothing of the suspect. Terry v. Ohio, 392 U.S. 1, 30 (1968). The Commonwealth concedes, and we agree, that a Terry pat down of the outer clothing of a suspect applies only to the clothing that the suspect is wearing. Garland was not wearing his pants at the time of the disputed search. Thus, the search of Garland's pants cannot be justified as a Terry pat down. Though it was certainly reasonable for the officers to enter the apartment in response to Garland's girlfriend's initial complaint, probable cause was required before they could reasonably undertake any search separate and apart from the original objective of their lawful entry into the residence, that is, to investigate whether a domestic assault had occurred. See Arizona v. Hicks, 480 U.S. 321, 324-29 (1987).

The Commonwealth argues that probable cause existed in this case because of the characteristics of the neighborhood, Garland's statement about drugs, and the circumstances of the domestic dispute. We disagree. The trial court, to whose factual findings we must defer, expressly found that Garland did not commit an assault on his girlfriend and that the police themselves had already reached that conclusion *before* the search of the pants. There was also

no evidence that Garland possessed or displayed a weapon during the argument with his girlfriend. Garland's statement regarding drugs in the house did not mention the pants, and, like the argument with his girlfriend, preceded the police officers' decision to release him. Moreover, the trial court did not rely on this statement. Thus, the only relevant circumstance supporting the search in this case, and also the only factor specifically mentioned by the trial court in justifying the denial of Garland's motion, was the high-crime neighborhood. This Court has previously noted that:

> "[T]housands of citizens live and go about their legitimate day-to-day activities in areas which surface . . . in court testimony, as being high crime neighborhoods. The fact that the events here at issue took place at or near an allegedly 'high narcotics activity' area does not objectively lend any sinister connotation to facts that are innocent on their face."

Riley v. Commonwealth, 13 Va. App. 494, 498, 412 S.E.2d 724, 726-27 (1992) (quoting Smith v. United States, 558 A.2d 312, 316 (D.C. App. 1989)). We hold that, at the time Officer Ross searched the pants, he did not have probable cause to believe that the pants contained contraband or evidence of a crime. Accordingly, the trial court erred in denying Garland's motion to suppress the marijuana.

Garland further argues that the trial court should have suppressed his statement that the pants were his because this statement was a reply to a question from Officer Ross that was not preceded by a warning pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). This statement was relevant only because it tended to prove that Garland knowingly possessed the marijuana Officer Ross found in the pants. Because we have already concluded that the trial court erred in admitting that marijuana into evidence, we express no opinion as to the merits of Garland's Miranda argument. See Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) ("an appellate court decides cases 'on the best and narrowest ground available'" (quoting

- 6 -

Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring))).

We reverse Garland's conviction, and remand to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.