## Doretha Mae Zimmerman

### v.

## Commonwealth of Virginia

Record No. 861027

January 15, 1988

Present: All the Justices

*Raymond A. Carpenter (J. Burkhardt Beale; Boone, Carpenter, Beale, Cosby & Hyder*, on brief), for appellant.
*Leah A. Darron, Assistant Attorney General (Mary Sue Terry, Attorney General*, on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

Following a bench trial in the Circuit Court of Nottoway County, defendant Doretha Mae Zimmerman was found guilty of operating a motor vehicle in the Commonwealth after having been declared an habitual offender. *See* Code § 46.1-387.8. She was sentenced to confinement in the penitentiary for one year with execution of the sentence suspended pending appeal.

In October 1986, the Court of Appeals denied defendant's petition seeking review of the conviction. We awarded defendant this appeal to consider one issue: Did the trial court err in ruling that the arresting police officer lawfully stopped the vehicle occupied by the defendant?

The facts are undisputed. Near 1:20 a.m. on September 14, 1985, defendant was operating a motor vehicle on East Parade Road on the grounds of Fort Pickett, a military base located in Nottoway County. A federal police officer, when there was "virtually no traffic," observed the vehicle moving "very slowly," travelling five to ten miles per hour in a 25-mile-per-hour zone. As the officer "pulled" his vehicle "up behind" the vehicle being operated by defendant, she drove from the travel portion of the street onto the grass.

A male passenger, later identified as defendant's husband, left the vehicle and asked the officer directions to a certain building on the base. The officer told the husband "to take the next right directly in front of him." As the husband returned to the vehicle,

the officer observed "this individual get into the driver's side and . . . watched the female driver of the vehicle slide over to the passenger side."

According to the officer, the vehicle then "left" and the officer "pulled up behind the red Chevrolet and put on my overhead lights and stopped the vehicle just beyond the point where he would have turned if he had followed my directions." Upon stopping the vehicle, the officer learned the occupants' names and asked them to produce their operator's licenses. When defendant failed to exhibit a license, the officer learned at the scene from the Division of Motor Vehicles that she was classified as an habitual offender, a fact which defendant admitted to the officer. Defendant then was arrested for operating a motor vehicle as an habitual offender.

The officer stated the reason he stopped the vehicle was because he "noticed they had switched operators and that attracted [his] attention." In response to a question by the trial judge, the officer testified, "When I gave him directions, he got into the driver's side and Ms. Zimmerman slid into the passenger side and they left. And that's what got my attention." The officer told the judge that he "pulled" defendant and her husband, not because "they missed the turn," but because "he got into the driver's side and she moved over to the passenger side."

The defendant argues, as in the trial court and in the Court of Appeals, that the stop of the vehicle was invalid under the Fourth and Fourteenth Amendments of the U.S. Constitution. She contends the trial court erred in ruling that the officer had a sufficient basis to justify the stop. We agree with the defendant.

■ The detention attacked in this case was an investigative stop, not an arrest. When the police stop a motor vehicle and detain an occupant, this constitutes a "seizure" of the person for Fourth Amendment purposes, even though the function of the stop is limited and the detention brief. *Leeth* v. *Commonwealth*, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982), *citing Delaware* v. *Prouse*, 440 U.S. 648, 653 (1979). As pertinent here, a person may be detained briefly for questioning by an officer who has " 'a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.' " *Leeth*, 223 Va. at 340, 288 S.E.2d at 478, *quoting Brown* v. *Texas*, 443 U.S. 47, 51 (1979). This test is not as strict as probable cause. *See Terry* v. *Ohio*, 392 U.S. 1 (1968).

■ The totality of the circumstances must be considered in determining whether the facts authorize the police to stop a person. The detaining officer " 'must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.' " *Leeth*, 223 Va. at 340, 288 S.E.2d at 478, *quoting United States* v. *Cortez*, 449 U.S. 411, 417-18 (1981).

■ The pertinent question in the present case, therefore, is whether, based on the totality of the circumstances viewed objectively, a police officer could entertain a reasonable suspicion that the defendant was involved in criminal activity. We answer that query in the negative.

■ The officer was presented with the following scenario which, viewed as a whole, demonstrates innocent, lawful conduct, not a basis for a reasonable suspicion of illegal, criminal conduct. During the early morning on a military installation, a motor vehicle occupied by two apparently normal adults is being operated properly, below the speed limit. Without any command from the officer, the operator voluntarily brings the vehicle to a halt. The passenger alights and, with normal demeanor, asks directions to a location on the military post. Armed with the requested information, the passenger assumes control of the vehicle and the prior driver moves to the passenger seat. The vehicle moves a short distance ahead, not turning in the direction given by the officer. Manifestly, this conduct falls below activity necessary to justify a reasonable suspicion that a violation of law had occurred or was occurring.

Moreover, we will not overlook or disregard the officer's articulated, particularized, subjective basis for his actions. Repeatedly during his testimony, he indicated that the sole reason for the stop was because the persons in the vehicle had "switched operators." Under the circumstances of this case, such conduct, viewed either in isolation as the officer considered it or along with the other behavior as the court must examine it, is utterly insufficient to generate a reasonable suspicion that defendant was involved in criminal activity.

In an alternative, harmless-error argument, the Attorney General contends that even if the stop was illegal, the defendant's conviction remains valid. The argument is that, although statements made by defendant to the police which were obtained as the result of an illegal seizure were inadmissible, facts obtained from an independent source may be proved. The Attorney General says the

fact that "the police officer learned the defendant's identity during the allegedly illegal stop is irrelevant" and that a "defendant's identity is not a suppressible fruit under the exclusionary rule," citing *United States* v. *Arias*, 678 F.2d 1202, 1206 (4th Cir.), *cert. denied*, 459 U.S. 910 (1982). We do not agree.

As the result of the illegal stop, the officer learned defendant's name. That information enabled the officer to determine defendant's status as an habitual offender. Thus, the unlawful stop resulted directly in her arrest and ultimate conviction.

We are not persuaded by the decision in *Arias*, which the court said was controlled by *United States* v. *Crews*, 445 U.S. 463 (1980). In *Arias*, the court refused to decide whether a motor vehicle occupied by the defendants had been stopped illegally. But, against a claim that the identity of the occupants would never have been discovered had the vehicle not been stopped, the court observed, "the identity of defendants is not suppressible under the exclusionary rule," noting, "The Supreme Court has held that the government is not prevented from bringing a defendant to trial merely because he was identified as a result of a false arrest," citing *Crews*. 678 F.2d at 1206.

In *Crews*, an in-court identification of defendant was held not to be suppressible as the fruit of defendant's unlawful arrest. Prior to defendant's arrest, "the police both knew [the defendant's] identity and had some basis to suspect his involvement in the very crimes with which he was charged." 445 U.S. at 475. Here, in contrast, defendant's identity and connection with unlawful activity were only first discovered through the illegal stop. Thus, we cannot say that the error committed by the trial court in the present case was harmless beyond a reasonable doubt.

Consequently, we hold that the Court of Appeals erred in denying defendant's petition for appeal. The judgment of conviction will be vacated and the order appealed from will be reversed. In addition, the indictment will be dismissed because without the evidence acquired as the result of the illegal stop, there was no evidence to support the conviction. *See Burks* v. *United States*, 437 U.S. 1, 15 (1978).

*Reversed and dismissed.*