## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

 v.

Marten Knoppel

November 2, 1993

Case No. (Criminal) 80191

BY JUDGE THOMAS A. FORTKORT

This case arose on appeal of a Driving While Intoxicated conviction from General District Court. Defendant, Marten Knoppel, moved to suppress evidence obtained in an investigatory stop of his automobile. The Court took the matter under advisement and proceeded to hear evidence. At the close of the Commonwealth's case, the defendant moved to strike the Commonwealth's evidence. For the reasons stated below, the Court sustains defendant's motion to suppress and sustains defendant's motion to strike.

The facts giving rise to this matter are outlined in the parties' memoranda. Complainant was driving to work when she noticed a dark colored vehicle following her. After several attempts to lose the follower, complainant pulled into a shopping center parking lot with the trailing vehicle close behind. Complainant then called the police from her car telephone. The police dispatcher relayed a description of the vehicle and its driver over the police radio. Upon hearing this broadcast, Fairfax County Police Officer Perkins responded to the scene. He positioned his police cruiser in the immediate vicinity of defendant's vehicle, activated his emergency lights, and approached defendant. Based on observations made during this encounter, Officer Perkins arrested defendant for Driving While Intoxicated.

The questions before this Court are whether Officer Perkins' behavior was an "investigatory stop" under the Fourth Amendment, and if so, whether the officer had reasonable suspicion to make that stop.

Fourth Amendment jurisprudence mandates that, "in the interest of effective crime prevention and detection . . . a police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio*, 392 U.S. 1, 22 (1968). While not all police-citizen encounters have Fourth Amendment implications, "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . a 'seizure' has occurred." *Terry*, 392 U.S. at 19, n. 16. As a threshold inquiry, therefore, the Court must determine whether Officer Perkins' behavior constituted a stop. Despite the Commonwealth's argument to the contrary, this Court is in agreement with defendant that Officer Perkins did initiate an investigatory stop of defendant. "When the police stop a motor vehicle and detain an occupant, this constitutes a 'seizure' of the person for Fourth Amendment purposes, even though the function of the stop is limited and the detention is brief. *Leeth v. Commonwealth*, 223 Va. 335, 340 (1982), citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Thus, by activating his emergency lights and approaching defendant's vehicle, Officer Perkins manifested a show of authority which constituted a Fourth Amendment seizure.

In asserting that the officer's actions did not rise to the level of a stop, the Commonwealth offers cases which do not illuminate the particular issue before this Court. *Brower v. County of Inyo*, 489 U.S. 593 (1989), presents the case of a fleeing felon who, after a twenty-mile police chase, collides with a police roadblock. The debate in *Brower* revolved around excessive force used to apprehend a suspect and the court held that a Fourth Amendment seizure is found, "only when there is a governmental termination of movement intentionally applied." *Brower*, 489 U.S. at 1381. That is, the court debated the "intentional" nature of the police action, not whether the suspect was already stationary when police effected the stop. Also, in *California v. Hodari D.*, 499 U.S. —, 111 S. Ct. 1547 (1991), the court found that a seizure had not taken place when a fleeing suspect dropped the narcotics he had been carrying. Again, the court focused the opinion on the intentional nature of the governmental action. In the instant case, there is no question that the evidence was discovered as a result of direct, intentional police action.

The second prong in the analysis invites the court to evaluate whether the officer's stop was grounded in reasonable suspicion. The "reasonable suspicion" standard requires that to effect a stop, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Baldwin v. Commonwealth*, 243 Va. 191, 195 (1992), quoting *Terry*, 392 U.S. at 21. Virginia courts apply the totality of the circumstances test, articulated by the United States Supreme Court in *United States v. Cortez*, 449 U.S. 411 (1981). This test urges courts to view "the whole picture" in determining whether "detaining officers . . . have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Cortez*, 449 U.S. at 417–18, cited in *Leeth v. Commonwealth*, 223 Va. 335, 340 (1982).

Several recent cases in which Virginia courts have found reasonable suspicion involve suspects engaging in clearly criminal activity: burglary, assault, distribution of narcotics.[1] Indeed, in these situations, "it would have been poor police work . . . for an [experienced] officer to have failed to investigate this behavior further." *Terry*, 392 U.S. at 23.

The case at bar, however, presents a situation in which the defendant is *not* suspected of criminal activity. When confronted with cases in which suspects are engaging in otherwise lawful activity, Virginia courts are reluctant to find reasonable suspicion. For instance, in *Waugh v. Commonwealth*, 12 Va. App. 620 (1991), cited by defendant, the officer received a radio dispatch stating that defendant was suspected of selling vacuum cleaners without a license and "being very pushy trying to gain entry into homes." *Waugh*, 12 Va. App. at 621. At the scene the officer made no independent observation of criminal wrongdoing by the defendant but after an encounter determined that defendant was an habitual offender. Vacating the conviction, the *Waugh* court remarked that the police dispatch "did not state that [defendant] was engaged in criminal activity," thus, the officer had no

---

[1] *Jones v. Commonwealth*, 230 Va. 14 (1985), (burglary suspect matched physical description and found loitering at scene of crime); *Jacques v. Commonwealth*, 12 Va. App. 591 (1991) (radio dispatch described car and passengers wanted in connection with a drug transaction and abduction, car spotted in vicinity); *Layne v. Commonwealth*, 15 Va. App. 23 (1992) (officer responded to scene of reported assault and battery, complainant gave physical description of defendant, defendant returned to scene).

justification for pulling over and stopping defendant. *Id.* at 622. In *Zimmerman v. Commonwealth*, 234 Va. 609 (1988), the officer pulled the defendants over solely because they switched drivers after asking directions of the officer who happened to have been following them. Evidence of defendant's habitual offender status was suppressed because defendant's conduct, "when viewed as a whole demonstrate[d] innocent, lawful conduct, not a basis for a reasonable suspicion of illegal, criminal conduct." *Zimmerman*, 234 Va. at 612.

Likewise in the instant case, the police radio broadcast carried no indication that defendant was involved in criminal activity. At the time of the investigatory stop, defendant Knoppel was sitting in his vehicle, engaging in no particular criminal behavior. The Virginia legislature has not yet criminalized the act of following someone in a motor vehicle. In addition, this defendant's conduct does not rise to the level of stalking, the crime offered by the Commonwealth as that for which Knoppel was initially stopped. Aimed at repeated conduct, the stalking legislation makes it a crime for "any person who *on more than one occasion* engages in conduct with the intent to cause emotional distress to another person by placing that person in reasonable fear of death or bodily injury" (emphasis added). Va. Code Ann. § 18.2–60.3 (1950). Plainly, Knoppel's behavior does not fit this statutory criteria.

The Court sustains defendant's motion to suppress. Consequently, the Court finds that the Commonwealth has no independent evidence on which to base defendant's arrest. Therefore, the Court also grants defendant's motion to strike the Commonwealth's evidence.