COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Senior Judge Hodges
Argued at Richmond, Virginia


CHARLES COREY ROBINSON

                                    MEMORANDUM OPINION* BY
v.    Record No. 1680-01-2       JUDGE JERE M. H. WILLIS, JR.
                                         MAY 21, 2002
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                        Thomas N. Nance, Judge

              Craig W. Stallard, Assistant Public Defender
              (Office of the Public Defender, on brief),
              for appellant.

              Eugene Murphy, Assistant Attorney General
              (Randolph A. Beales, Attorney General, on
              brief), for appellee.


     Charles Robinson was convicted in a bench trial of (1)

possession of cocaine with the intent to distribute, in violation

of Code § 18.2-248; (2) possession of heroin, in violation of Code

§ 18.2-250; and (3) possession of marijuana, in violation of Code

§ 18.2-250.1.  Arguing that he was seized without probable cause

or reasonable suspicion, he contends that the trial court erred in

denying his motion to suppress.  He further contends that

insufficient evidence supports his conviction for possession of

cocaine with the intent to distribute.  We disagree and affirm the

judgment of the trial court.

─────────────────────

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

I.  BACKGROUND

A.  TRAFFIC STOP

On November 17, 2000, Virginia State Trooper D.J. Corbett stopped at the traffic signal at the intersection of Jahnke Road and Forest Hill Avenue in Richmond.  Robinson pulled his car up to the intersection and stopped to Trooper Corbett's left.  Looking to his left, Trooper Corbett observed hanging from Robinson's mouth what he believed from his experience was a hand-rolled marijuana cigarette.  Robinson looked over at the trooper, made eye contact, then looked back.  Facing front, Robinson pulled down on his lip, removed the cigarette from his mouth, and then looked up and to his left.  Trooper Corbett motioned Robinson to pull over.

Approaching Robinson's car, Trooper Corbett detected a strong odor of marijuana.  He removed Robinson from the car, placed him in handcuffs, and Mirandized him.  Trooper Corbett then explained that he was detaining Robinson until he determined how much marijuana was in the car.  Trooper Corbett also removed a passenger from the car.  Robinson told Trooper Corbett that he had thrown the cigarette out the window and that his passenger had thrown out the marijuana.

Trooper Corbett began to search for the cigarette and the marijuana.  He found neither.  He advised Robinson that he wanted to search the car and asked for Robinson's consent.  Robinson refused.  Trooper Corbett advised Robinson that he had

-

probable cause to search the car and would do so. Robinson thereupon volunteered that $500 worth of cocaine was "under the car."

During the vehicle search, Trooper Corbett discovered (1) 6.4 grams of marijuana beneath the seat; (2) 46.88 grams of crack cocaine beneath the seat on the passenger side, just down from the marijuana; (3) 0.047 grams of heroin wrapped in a one dollar bill in Robinson's wallet, which was in the car; and (4) Oxycodone (Percoset) tablets. In searching Robinson, he discovered $860 in cash.

After the drugs were discovered, Robinson stated he had lent his car to a person called "Mousee." He stated he was going to return the drugs to Mousee "and he hadn't realized the drugs were in there until [the passenger] looked under the front seat and mentioned that there was cocaine under the front seat." Robinson stated that this conversation with the passenger occurred before his car was stopped.

## B.  TRIAL

Robinson was indicted for (1) possession of cocaine with the intent to distribute, in violation of Code § 18.2-248; (2) possession of heroin, in violation of Code § 18.2-250; (3) possession of Oxycodone, in violation of Code § 18.2-250; and (4) possession of marijuana, in violation of Code § 18.2-250.1. Robinson moved to suppress as evidence the drugs found by Trooper Corbett in the car, arguing that his stop by

-

Trooper Corbett and the resulting warrantless search were unsupported by probable cause or reasonable suspicion and, therefore, constituted an unlawful search and seizure. The motion to suppress was denied. The trial court stated:

> You know, I probably never would have seen the cigarette. None of the rest of us would have unless you've had that training. It's certainly [sic] he cannot articulate what he saw, but it is a reasonable articulable suspicion. And I think the furtive movement, the way the trooper described the way he removed it after seeing, making eye contact. We give him a minimal amount of reasonable articulable suspicion.

The case proceeded to trial. At the close of all the evidence, the motion to suppress was renewed and again denied. Robinson was found not guilty of possession of Oxycodone, but was convicted on the remaining counts. He was sentenced to ten years incarceration with five years suspended for possession of cocaine with the intent to distribute. On the charge of possession of heroin, he was sentenced to five years incarceration with two years suspended. The trial court suspended imposition of sentence on the possession of marijuana charge.

## II. ANALYSIS

On appeal, Robinson contends that the trial court erred in denying his motion to suppress. He argues that he was seized without probable cause or reasonable suspicion and that the resulting search of his car was unlawful. He also argues that

-

the evidence was insufficient to support his conviction for possession of cocaine with the intent to distribute. We disagree on both issues.

### A. DENIAL OF MOTION TO SUPPRESS

Upon a Fourth Amendment challenge on appeal, "[u]ltimate questions of reasonable suspicion and probable cause to make a warrantless search" involve questions of both law and fact and are reviewed de novo. McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 691 (1996)). We are bound by "the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." Id. at 198, 487 S.E.2d at 261 (citing Ornelas, 517 U.S. at 699).

Trooper Corbett's initial stop of Robinson was predicated on reasonable suspicion.

> [W]hen a court reviews whether an officer
> has reasonable suspicions to make an
> investigatory stop, it must view the
> totality of the circumstances and view those
> facts objectively through the eyes of a
> reasonable police officer with the
> knowledge, training and experience of the
> investigating officer. Based upon that
> objective assessment, courts must determine
> whether the officer could have entertained
> an articulable and reasonable suspicion that
> the defendant was involved in unlawful
> activity. If the officer's suspicion
> amounts to merely an "inchoate and
> unparticularized suspicion or 'hunch' . . .

-

> [rather] than a fair inference in light of
> his experience, [it] is simply too slender a
> reed to support the seizure" under the
> fourth and fourteenth amendments of the
> United States Constitution.

Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989) (citation omitted).

The circumstances to be considered in determining reasonable suspicion include "any suspicious conduct of the person accosted such as an obvious intent to avoid officers or any nervous conduct on the discovery of their presence." United States v. Bull, 565 F.2d 869, 870-71 (4th Cir. 1977). Such circumstances were considered in Hollis v. Commonwealth, 216 Va. 874, 223 S.E.2d 877 (1976).

In Hollis, Officer Cox observed Hollis sitting in an automobile smoking a hand-rolled cigarette. Experienced in narcotics investigations, Officer Cox believed the cigarette to contain marijuana. When the officer approached the automobile, Hollis furtively attempted to hide the cigarette from view. Before opening the car door, Cox observed the hand-rolled cigarette on the floorboard. In affirming Hollis' conviction, the Court held that "[t]he appearance of the cigarette and Hollis's furtive gesture in attempting to hide it combined to provide the necessary probable cause to search the car without obtaining a warrant." Id. at 877, 223 S.E.2d at 889.

Like Officer Cox, Trooper Corbett possessed narcotics experience. In five years with the Virginia State Police he had

-

recorded over 160 drug arrests involving marijuana, cocaine, heroin, and ecstasy. He testified that when Robinson pulled up beside him at the intersection, he observed what he believed from his experience to be a marijuana cigarette. After making eye contact, Robinson removed the cigarette from his mouth and began looking in the opposite direction, avoiding further eye contact. Trooper Corbett's experience and observations, coupled with Robinson's furtive actions, provided reasonable suspicion to stop Robinson.

Upon approaching Robinson's car, Trooper Corbett detected a strong odor of marijuana. That odor, coupled with his previous observations, provided Trooper Corbett probable cause to search the vehicle. Consequently, the trial court did not err in denying Robinson's motion to suppress the fruits of that search.

B. EVIDENCE SUFFICIENT TO ESTABLISH POSSESSION OF COCAINE

Robinson argues that the evidence was insufficient to prove that he possessed the cocaine found in the car. No drugs were found on Robinson's person. Thus, he was not in actual possession of any drugs. However, the Commonwealth may prove constructive possession. See Wright v. Commonwealth, 217 Va. 669, 670, 232 S.E.2d 733, 734 (1977). To prove constructive possession, the Commonwealth must prove (1) that Robinson was aware of the presence and character of the drugs found in the car; and (2) that he exercised dominion and control over them.

-

See Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986).

Robinson concedes that he had knowledge of the presence and character of the cocaine. He informed Trooper Corbett of its presence in the car, thus satisfying the first prong of the test as to the cocaine. However, he argues that the evidence was insufficient to show he exercised dominion and control over the cocaine. We disagree.

Robinson asserted that he and his passenger had a conversation, prior to the stop, regarding the presence of the cocaine. Indeed, he testified that he told Trooper Corbett that he intended to return the drugs to "Mousee," the proper owner. Those actions, coupled with the cocaine's close proximity to Robinson, are sufficient to constitute exercise of dominion and control. Consequently, the evidence was sufficient to prove constructive possession of the cocaine. This supports an inference of constructive possession with respect to the other drugs.

The judgment of trial court is affirmed.

Affirmed.

-

Benton, J., dissenting.

"When the police stop a motor vehicle and detain an occupant, this constitutes a 'seizure' of the person for Fourth Amendment purposes, even though the function of the stop is limited and the detention brief."  Zimmerman v. Commonwealth, 234 Va. 609, 611, 363 S.E.2d 708, 709 (1988) (citations omitted).

> It is well-established that an investigatory stop may be initiated only when an officer has "a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity."  When examining the officer's articulable reasons for stopping a person, we examine the objective reasonableness of the officer's behavior rather than the officer's subjective belief that the conduct indicates criminal activity.

Riley v. Commonwealth, 13 Va. App. 494, 496-97, 412 S.E.2d 724, 725 (1992) (quoting Brown v. Texas, 443 U.S. 47, 51 (1979)).  "'Ultimate questions of reasonable suspicion . . . to make a warrantless search' involve questions of both law and fact and are reviewed de novo on appeal."  McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (citation omitted).

The evidence in this record proves that "[t]he detaining officer [did not] 'have a particularized and objective basis for suspecting [Robinson] of criminal activity.'"  Zimmerman, 234 Va. at 612, 363 S.E.2d at 710 (citation omitted).  When the officer was waiting for the traffic light to change, Robinson

-

stopped his vehicle in the travel lane to the left of the officer's vehicle.  The officer looked into Robinson's vehicle while both were stopped for the traffic light; he saw a front seat passenger and Robinson, the driver.  The officer testified he "observed a hand rolled cigarette hanging from the mouth of the driver . . . Robinson."  The officer then noted the following:

> [Robinson] looked over to the right and my eyes looked into his eyes and he then looked back.  His head then turned back so it was facing front again.  He pulled down on his lip pulling the cigarette out of his mouth . . . and proceeded to look up and to his left.

As the light turned green, the officer motioned to Robinson to stop his vehicle.

Nothing in the officer's testimony suggests that he had a particularized and objective basis for suspecting Robinson of criminal activity.  Brown, 443 U.S. at 51.  An objective assessment of the totality of the circumstances requires more than a recitation of the minutia of the factual setting.  Unless the objective facts are shown to give rise to a reasonable articulable suspicion of criminal conduct, the seizure is unlawful.  The officer articulated nothing about his observation that suggested the cigarette did not contain ordinary tobacco.  The brief eye contact the officer had with Robinson had no articulable significance.  The fact that a person looks at an officer does not justify a suspicion of wrongdoing.  Taylor v.

-

Commonwealth, 6 Va. App. 384, 389, 369 S.E.2d 423, 425 (1988). See also Reid v. Georgia, 448 U.S. 438, 441 (1980). The officer saw the driver smoking a hand-rolled cigarette and had only a subjective hunch that caused him to investigate the vehicle and detain the occupants.

Every citizen has a constitutionally guaranteed right not to be stopped at the unfettered discretion of police. "Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.'" Davis v. Mississippi, 394 U.S. 721, 726-27 (1969). Fundamental Fourth Amendment principles require that, "in justifying [a] particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. 1, 21 (1968). "In the absence of any basis for suspecting [Robinson] of misconduct, the balance between the public interest and [Robinson's] right to personal security and privacy tilts in favor of freedom from police interference." Brown, 443 U.S. at 52.

The circumstances proved by the evidence in this case are significantly different than those proved in Hollis v. Commonwealth, 216 Va. 874, 223 S.E.2d 887 (1976). There, police detectives were watching a particular Mustang car that a

-

reliable informant said was transporting narcotics.  Id. at 875,

223 S.E.2d at 888.

> As the detectives drove past, [a detective]
> shined a hand spotlight on the Mustang and
> "it lit the whole complete car up."  [The
> detective] saw Hollis, seated in the
> passenger seat, remove what appeared to be a
> hand-rolled cigarette from his mouth and
> throw it to the floor of the car.  [The
> detective] testified that in his
> investigation of narcotics cases in past
> years he had found that such a movement
> comes from "people trying to get rid of
> them."

Id.

The fact that the detectives had reliable information about

narcotics in the car added context to their suspicion that the

hand-rolled cigarette contained narcotics.  Furthermore, the

detectives saw Hollis remove the hand-rolled cigarette from his

mouth and throw it to the floor of the car after Hollis saw

them.  No testimony indicated that Hollis extinguished the

cigarette before dropping it on the floor of the car.

Additionally, the detective articulated that in his experience

the unusual conduct of a person removing a hand-rolled cigarette

from his mouth and discarding it on the floor of a car indicated

the person wanted to hide contraband.

Unlike Hollis, the officer did not see Robinson do anything

with the cigarette that any ordinary smoker of a hand-rolled

tobacco cigarette would not have done.  Robinson's activities

were no different than any other driver in those same

-

circumstances; he "acted as any other person might have acted under similar circumstances."  Ewell v. Commonwealth, 254 Va. 214, 217, 491 S.E.2d 721, 723 (1997).  Furthermore, the evidence does not establish that Robinson did anything unusual with the cigarette as he smoked it and held it in his hands.  Certainly, the officer articulated nothing that indicated Robinson's conduct corresponded to the activities of a person violating the law.  "At best, [the officer's] suspicion amounts to merely an 'inchoate and unparticularized suspicion or "hunch" . . . [rather] than a fair inference in the light of his experience.'" Gilpin v. Commonwealth, 26 Va. App. 105, 111-12, 493 S.E.2d 393, 396 (1997) (citation omitted).

As the Court held in Reid, a suspicion based merely on an officer's observation of conduct that is characteristic of a very large category of innocent persons is a suspicion grounded only in a "hunch" and "is simply too slender a reed to support the seizure."  448 U.S. at 441.  "'Reasonable suspicion' is more than a 'mere hunch.'"  Commonwealth v. Thomas, 23 Va. App. 598, 610-11, 478 S.E.2d 715, 721 (1996).  "Under the circumstances of this case, [Robinson's] conduct, viewed either in isolation as the officer considered it or along with the other behavior as the court must examine it, is utterly insufficient to generate a reasonable suspicion that [Robinson] was involved in criminal activity."  Zimmerman, 234 Va. at 612, 363 S.E.2d at 710.

-

For these reasons, I would hold that the officer had no reasonable articulable suspicion that Robinson was engaging in criminal activity. He acted on a hunch and was not justified in making the detention. I dissent.