COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Humphreys and Senior Judge Hodges
Argued at Richmond, Virginia


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.       Record No. 0076-04-1                    JUDGE ROBERT J. HUMPHREYS
                                                          JUNE 15, 2004
KENNETH MAURICE BRYANT


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
David F. Pugh, Judge

Robert H. Anderson, III, Senior Assistant Attorney General
(Jerry W. Kilgore, Attorney General, on brief), for appellant.

Robert C. Astor for appellee.


        The Commonwealth appeals an order of the trial court granting Kenneth Maurice

Bryant's motion to suppress evidence. For the reasons that follow, we reverse.

        On appeal of a trial court's ruling on a motion to suppress, we review the evidence in the

light most favorable to the prevailing party below, together with all reasonable inferences that

may be drawn from that evidence. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407

S.E.2d 47, 48 (1991). This principle requires us to disregard the evidence of the Commonwealth

in conflict with Bryant's evidence and regard as true all evidence favorable to Bryant. See

Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998). Further,

because "the constitutionality of a search and seizure under the Fourth Amendment involves

questions of law and fact, we give deference to the factual findings of the trial court but

independently decide whether, under the applicable law, the manner in which the challenged

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication. Moreover,
as this opinion has no precedential value, we recite only those facts necessary to our holding.

evidence was obtained satisfies constitutional requirements." Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004) (citing McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001); Ornelas v. United States, 517 U.S. 690, 696-97 (1996)). We must also remain mindful that the "Commonwealth carries the burden of showing that a warrantless search and seizure was constitutionally permissible." Id. at 673, 594 S.E.2d at 598.

The evidence relevant to this appeal is virtually undisputed. On November 10, 2003, the grand jury indicted Bryant for possession of cocaine, in violation of Code § 18.2-250. Prior to his trial, Bryant moved to suppress the evidence against him, arguing that the police officer acted unreasonably in stopping and searching his car, as well as in questioning him.[1]

During the hearing on the motion, Officer C.W. Smith, of the Newport News Police Department, testified that during the early morning hours[2] of August 13, 2003, he observed a red Toyota enter the parking lot of the James River West Motel. Because "No Trespassing" signs were clearly posted on the property, Officer Smith "went over to that area to speak to the driver as to his reason for being on the property." However, as Officer Smith approached the parking lot, after about "30, 45 seconds," the red Toyota "left" the parking lot and continued to drive "down Warwick Boulevard." Officer Smith followed the car and observed an "air freshener hanging from the rear view mirror" of the car. He testified that it "appeared to be a plastic air freshener." At that point, Officer Smith stopped the red Toyota, "[b]ecause the object was

---

[1] During the hearing on the motion to suppress, Bryant's counsel advised the court that he was "alleging an improper stop. If the Court concludes that that is not the case, then we would have a motion to suppress statements based upon the Miranda issue." Thus, because the trial court sustained the motion to suppress on Bryant's argument concerning the "improper stop," Bryant apparently elected not to pursue the remaining issue.

[2] The criminal complaint filed by Officer Smith indicates that he observed Bryant at approximately 2:12 a.m.

hanging from the rear view mirror.  [He] felt it could be obstructing the view of the driver in his operation of the vehicle."

The criminal complaint, subsequently filed by Officer Smith, indicates that the driver of the red Toyota was Bryant.  It states that after Smith stopped the car, Bryant "granted a consent search" of the car, as a result of which Officer Smith located a metal smoking device with "suspected cocaine residue," as well as a "rock of suspected crack cocaine."  Officer Smith thus arrested Bryant for possession of cocaine.

Officer Smith testified that the air freshener was "in the shape of a dragon" and was "three-and-a-half by one-and-a-half inches."  The Commonwealth stipulated that the windshield of the red Toyota measured "56 inches by 30.5 inches."

From this evidence, Bryant argued that Officer Smith lacked "probable cause" to stop Bryant, because

> the probable cause question is . . . not whether or not this officer noted the mere presence of something in the windshield but whether or not the officer could reasonably suspect from the circumstances that the size and position and shape of the object in relation to the windshield posed an actual safety issue, potential safety hazard, that would, in fact, block a clear – that is, easily seen – view of the highway from any of the windows that the statute [(Code § 46.2-1054)] refers to.

Bryant continued,

> [t]he test has to be *whether or not there's reasonable grounds to believe or reasonable suspicion that it poses a safety risk. . . .* I don't believe there's any way that the officer could reasonably conclude from the size and the position and the shape of that air freshener that there was, in fact, an actual safety hazard, *probable cause or reasonable suspicion* that there was a safety hazard to the driving public on the grounds that it blocked the, quote, clear view of the highway.  With that object hanging there, you still have 99.67 percent of the windshield still unobstructed, which the

- 3 -

photograph clearly shows still affords the driver a clear view of the highway.

(Emphases added).

In response, the Commonwealth contended that Officer Smith had "probable cause" to make the stop, because he had "probable cause" to believe Bryant violated Code § 46.2-1054 by having the air freshener dangling from the rearview mirror of his car.

Bryant replied that "the issue" was whether Officer Smith possessed a "reasonable suspicion" that the object was "suspended in such a fashion as to block the clear view of the highway." He stated his "position [was] no."

In making its determination as to whether the suspected violation of Code § 46.2-1054 was "sufficient for the officer to stop the vehicle," the trial court stated:

> In looking at the photograph and in looking at the size of the item, clearly common sense tells me that that item does not obstruct one's view in an automobile while driving. I think that's what Judges are for, to determine whether or not the officer's stop is proper under the facts and circumstances that we have. I don't see a safety violation. If, in fact, the officer is going to make a stop for something like that on a rear view mirror, then I would suggest that he could park on Jefferson Avenue or Warwick Boulevard or any of the highways and see the tassels from the graduating classes throughout the Commonwealth or any other item. I think if that item does not obstruct the view, then I think that it's unnecessary for that officer to make that stop.
>
> What I'm saying is I sustain your motion to suppress. I find that the item in question is not such that would obstruct the view. I'm not talking about making a final determination on whether or not the officer could stop. I think under the facts and circumstances of this case, I do not find that the reason to stop is sufficient. Based on that, I sustain the motion.

On appeal, the Commonwealth argues that the trial court erred in "granting the motion to suppress, because it disregarded the assessment of the arresting officer in conducting a Terry stop of the defendant." We agree.

- 4 -

We begin by recognizing that "'[w]hen the police stop a motor vehicle and detain an occupant, this constitutes a seizure of the person for Fourth Amendment purposes, even though the function of the stop is limited and the detention brief.'" Logan v. Commonwealth, 19 Va. App. 437, 441, 452 S.E.2d 364, 367 (1994) (quoting Zimmerman v. Commonwealth, 234 Va. 609, 611, 363 S.E.2d 708, 709 (1988)). Thus, "[i]n order to justify an investigatory stop of a vehicle, [an] officer must have some reasonable, articulable suspicion that the vehicle or its occupants are involved in, or have recently been involved in, some form of criminal activity." Id. Nevertheless, the "level of suspicion required [for an investigative stop] is less demanding than the standard of probable cause." Quigley v. Commonwealth, 14 Va. App. 28, 33, 414 S.E.2d 851, 854 (1992). Specifically,

> [i]n determining whether an "articulable and reasonable suspicion" justifying an investigatory stop of a vehicle exists, courts must consider "the totality of the circumstances — the whole picture." [Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989)] (citing United States v. Sokolow, 109 S. Ct. 1581, 1585 (1989)). See also Zimmerman, [234 Va. at 612, 363 S.E.2d at 709]. As we stated in Castaneda v. Commonwealth, 7 Va. App. 574, 376 S.E.2d 82 (1989) (*en banc*): "Each instance of police conduct must be adjudged for reasonableness in light of the particular circumstances." Id. at 580, 376 S.E.2d at 85.

Logan, 19 Va. App. at 441, 452 S.E.2d at 367.

Thus, "courts must apply objective standards in determining whether the requisite degree of suspicion exists, taking into account that trained police officers may be 'able to perceive and articulate meaning to given conduct which would be wholly innocent to the untrained observer[,]' United States v. Gooding, 695 F.2d 78, 82 (4th Cir. 1982)[,] [and] [a]ttention must be focused on objective reasonableness rather than on the police officer's subjective intent." Iglesias v. Commonwealth, 7 Va. App. 93, 101, 372 S.E.2d 170, 174-75 (1988) (other internal quotation marks omitted).

As the Supreme Court explained in Terry:

> The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the law can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?

Id. at 101-02, 372 S.E.2d at 175 (quoting Terry v. Ohio, 392 U.S. 1, 21-22 (1968)).

> In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.

Illinois v. Wardlow, 528 U.S. 119, 124-25 (2000).

Yet, in conducting a Terry stop, police officers are not required "to have reasonable suspicion of ongoing illegal activity." United States v. Perkins, 363 F.3d 317, 326 (4th Cir. 2004).

> Indeed, the very point of Terry was to permit officers to take preventive action and conduct investigative stops before crimes are committed, based on what they view as suspicious — albeit even legal — activity. See Wardlow, [528 U.S. at 125-26]. Whereas the prevailing probable cause standard is whether an officer had a reasonable basis for believing that an individual "had committed or was committing an offense," Beck v. Ohio, 379 U.S. 89, 91 (1964), the Terry standard is whether an officer reasonably believed that "criminal activity may be afoot," [Terry, 392 U.S. at 30]. . . . Consequently, the mere fact that particular conduct may be susceptible of an innocent explanation does not establish a lack of reasonable suspicion. See Wardlow, 528 U.S. at 125. . . . Officers, in other words, are not required to rule out all possibility of innocent conduct or to wait until criminal activity actually occurs

- 6 -

before responding to a suspicious set of circumstances. [United States v. Arvizu, 534 U.S. 266, 277-78 (2002)].

Id. at 326-27.

Turning to the facts in the instant case, Code § 46.2-1054 prohibits driving a vehicle "with any object . . . suspended from any part of the motor vehicle in such a manner as to obstruct the driver's clear view of the highway through the windshield." Code § 46.2-1054. Officer Smith stopped the vehicle based upon his belief that it was being operated in violation of that statute. Specifically, he implicitly indicated that the plastic air freshener dangling from Bryant's rearview mirror was large enough that he was able to observe it from his own patrol car as he followed behind Bryant. This is true, even though the record indicates that it was dark at the time Officer Smith observed it. Because, as Officer Smith testified, he "felt it could be obstructing the view of the driver in his operation of the vehicle," Officer Smith conducted the traffic stop. We find that these circumstances, even when viewed in the light most favorable to Bryant, clearly provided Officer Smith with – at the very least – reasonable suspicion sufficient to briefly detain Bryant and investigate the suspected violation.[3] See Hoye v. Commonwealth, 18 Va. App. 132, 134, 442 S.E.2d 404, 406 (1994) (A police officer has the authority to detain a

---

[3] As Bryant accurately points out on appeal, the Commonwealth failed to raise an argument pertaining to reasonable suspicion below. However, as set forth above, the record clearly establishes that Bryant himself argued a lack of reasonable suspicion, in addition to a lack of probable cause. Moreover, although we find that the trial court erred in failing to ultimately *apply* the reasonable suspicion test, its remarks from the bench plainly indicate that it considered "reasonable suspicion" to be the appropriate standard at issue. The purpose of Rule 5A:18 "is to insure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals." Correll v. Commonwealth, 42 Va. App. 311, 324, 591 S.E.2d 712, 719 (2004). We find that the parties here, including the trial court, were clearly given the opportunity to consider the issue of reasonable suspicion – and in fact, did so. Thus, we find no Rule 5A:18 violation and consider the issue accordingly.

vehicle upon his reasonable and objective belief, derived under the particular circumstances, that the vehicle is being operated in violation of the law.).

As the Commonwealth points out, the trial court made no factual determination concerning Officer Smith's basis for the stop.[4] Instead, the court found that Officer Smith's "reason to stop was [in]sufficient" merely because the trial court did not find, as a matter of "common sense," that the item would obstruct one's view. Whether the item, in actuality, would obstruct one's view in order to support a conviction under the statute beyond a reasonable doubt, is most certainly a factual determination to be made by the trial court or a jury as the fact finder. However, in making that determination in this context – a hearing on Bryant's motion to suppress – we find that the trial court erred.

In particular, we find that the trial court incorrectly *applied* the legal standard in this case. Specifically, the trial court erred in determining whether "common sense" would lead to a conclusion that the object - *in fact* - constituted a violation of the statute. The trial court should have considered merely whether the officer, under the totality of the circumstances, possessed a reasonable and articulable belief that the item *may* have constituted a violation of the statute. Harmon v. Commonwealth, 15 Va. App. 440, 444, 425 S.E.2d 77, 79 (1992) (noting that for purposes of a lawful investigative detention, "[a]ctual proof that criminal activity is afoot is not necessary; the record need only show that it may be afoot"). In fact, the statute does not set forth any element requiring an item to be of a certain size, or requiring a certain specified percentage of obstruction. It simply states that "*any* object" obstructing "the driver's clear view of the highway through the windshield," may constitute a violation of the statute. Code § 46.2-1054

---

[4] Of particular note, the trial court made no finding, implicitly or otherwise, that Officer Smith's stated reasons for the stop were pretextual in nature.

(emphasis added).  Officer Smith, thus, acted reasonably in stopping Bryant to briefly determine if the item obstructed his clear view of the roadway.

Because we find that, based on the situation as it was known to Officer Smith at the time, the stop for the purpose of obtaining more information was reasonable, we reverse the judgment of the trial court and find that the stop was based on articulated facts which established reasonable suspicion that criminal activity may well have been afoot.  We do not address the propriety of Officer Smith's subsequent actions, as Bryant's counsel elected below not to pursue any additional issues.

Reversed.