COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Petty and Chafin
Argued by teleconference

COMMONWEALTH OF VIRGINIA

v.      Record No. 1017-18-2

JERMAINE ANTOINE COLEMAN

MEMORANDUM OPINION* BY
CHIEF JUDGE GLEN A. HUFF
NOVEMBER 20, 2018

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Phillip L. Hairston, Judge

John I. Jones, IV, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs), for appellant.

(K. Scott Miles, on brief), for appellee. Appellee submitting on
brief.

Pursuant to Code § 19.2-398(A)(2), the Commonwealth of Virginia ("Commonwealth")

appeals a pretrial order issued by the Circuit Court of the City of Richmond, ("trial court") which

granted Jermaine Antoine Coleman's ("appellee") motion to suppress all evidence obtained as a

result of an encounter between appellee and two officers at a housing project in Richmond. On

appeal, the Commonwealth asserts that the trial court erred by:

1. Deeming the comparative analysis of appellee's fingerprints the "fruit" of an illegal seizure.
2. Determining that appellee was seized when he was initially contacted by the officers.
3. Determining that the officers did not have reasonable suspicion to detain appellee.
4. Improperly applying the exclusionary rule to the comparative analysis.

For the following reasons, this Court reverses the trial court's ruling.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

When reviewing a trial court's decision to grant a motion to suppress evidence, this Court views the facts in the light most favorable to the prevailing party below and grants all reasonable inferences fairly deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). So viewed, the evidence is as follows.

On September 2, 2017, Sergeant John Gardner ("Gardner") of the Richmond Police Department was patrolling the area around Fairfield Court, a Richmond Redevelopment Housing Authority neighborhood. Gardner was in a patrol car with Officer Gains ("Gains"), and other members of his Focused Mission Team ("FMT") were in the vicinity. Officers Gardner and Gains observed appellee and Javon Lynch ("Lynch") standing together in a courtyard. Neither officer recognized appellee. They did not know if appellee was barred from the property or if he had any outstanding warrants. Gardner did not notice any contraband, any apparent transaction, or any other indication of criminal activity.

When the two men noticed Gardner's marked police car, they immediately separated from one another and walked in different directions. Gardner and Gains followed appellee, while other officers from their team followed Lynch. Gains caught up to appellee on a nearby sidewalk, after he had walked around the corner of a building, and stated "come back to me unless you want to get muddy, yeah, come to me."[1] Appellee immediately complied, returning to Gains with his hands raised. Gains made contact with appellee and lifted his shirt to check appellee's waistband for weapons, finding none. Gains then asked appellee for identification, and appellee provided his ID card. The officers checked to see if appellee had outstanding

---

[1] This language comes from the trial transcript. In its letter opinion, the trial court recites the quote as "come this way or you're gonna get muddy, yeah, come to me." This Court finds that either version of the quote supports the trial court's conclusion that "it clearly shows that the officer was prepared to compel compliance to his order."

warrants, and determined he had none. Gains also asked appellee if he was barred from the property, which is posted "no trespassing," and appellee admitted that he was.

Sometime after Gains made his initial contact with appellee, other officers recovered a firearm on the ground a few feet from where appellee had been standing and talking to Lynch. Other officers also followed Lynch and observed him discard a bag which was later found to contain crack cocaine. Lynch was taken into custody out of view of Gains and Gardner, and they were unaware of what was going on with Lynch during their initial contact with appellee. After learning that their colleagues had discovered a firearm, they placed handcuffs on appellee. The officers detained appellee for a short time but released him without arrest. They secured the firearm and sent it to the forensics lab for fingerprint testing.

A technician was able to recover a latent print from the magazine of the firearm, and compared the print to appellee's prints on file in the Central Criminal Records Exchange ("CCRE"). Because appellee was a convicted felon, the Commonwealth sought and obtained a grand jury indictment against appellee for violation of Code 18.2-308.2, possession of firearm by violent felon. Appellee was arrested, and moved to suppress the fingerprint comparison. After a hearing, the trial court granted the motion. After the trial court rejected a motion to reconsider, the Commonwealth timely filed this appeal.

## II. STANDARD OF REVIEW

When the Commonwealth appeals a trial court's order to suppress evidence, "the evidence must be viewed in the light most favorable to the [appellee]." Commonwealth v. Peterson, 15 Va. App. 486, 487, 424 S.E.2d 722, 723 (1992). The burden is on the appellant "to show that when viewing the evidence in such a manner, the trial court committed reversible error." Hairston v. Commonwealth, 67 Va. App. 552, 560, 797 S.E.2d 794, 798 (2017). Any claim of Fourth Amendment violation presents "a mixed question of law and fact that we review

- 3 -

*de novo* on appeal." Harris v. Commonwealth, 276 Va. 689, 694, 668 S.E.2d 141, 145 (2008). Appellate courts "are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them" and "give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*). This Court will, however, "determine independently whether, under the law, the manner in which the evidence was obtained satisfies constitutional requirements." McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001). The same *de novo* standard applies to "the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case." Hayes v. Commonwealth, 29 Va. App. 647, 652, 514 S.E.2d 357, 359 (1999).

III.  ANALYSIS

The Fourth Amendment guarantees a person's right to be "secure in their persons . . . and effects, against unreasonable searches and seizures." U.S. Const. amend IV. "In order to make effective" these guarantees, the United States Supreme Court has held "that evidence seized during an unlawful search," as well as the indirect "products of such invasions" may not be used by the government at trial. Wong Sun v. United States, 371 U.S. 471, 484 (1963). "The exclusionary rule prohibits the introduction . . . of tangible and testimonial evidence acquired" through unlawful searches or seizures, as well as "derivative evidence 'that is otherwise acquired as an indirect result'" of such activity. Commonwealth v. Ealy, 12 Va. App. 744, 754, 407 S.E.2d 681, 687 (1991) (quoting Murray v. United States, 487 U.S. 533, 536-37 (1988)). This "fruit of the poisonous tree" doctrine is subject to three limitations. The relevant one for this case allows the use of evidence "where the connection [to the illegal police activity] has become so attenuated as to dissipate the taint" of that illegal action. Id. at 755, 407 S.E.2d at 688 (quoting Warlick v. Commonwealth, 215 Va. 263, 266, 208 S.E.2d 746, 748 (1974)).

Appellee contends that because the Commonwealth obtained his "identifying information" through an illegal seizure, the direct comparison between the fingerprints on the handgun and appellee's fingerprints on record at CCRE was obtained "by exploitation of that illegality" and must be suppressed. See Wong Sun, 371 U.S. at 488 ("the question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality . . .'" (quoting Maguire, Evidence of Guilt, 221 (1959))). Because the officers did not recognize appellee when they first saw him, appellee argues that "but for" the illegal seizure and subsequent examination of his identification card, the government would not have been able to complete the fingerprint comparison and thus link him to the firearm discovered on the scene. Evidence is not, however, "fruit of the poisonous tree" simply because it would not have come to light "but for" an unlawful police act. Ealy, 12 Va. App. at 755, 407 S.E.2d at 688. Rather, this Court must determine if the evidence in question—the comparative analysis between appellee's fingerprints on file and the fingerprint found on the firearm—was obtained "by means sufficiently distinguishable to be purged of the primary taint." Id. (quoting Segura v. United States, 468 U.S. 796, 804-05 (1984)).

Even assuming, without deciding, that appellee was seized illegally before the police obtained his identification card, this Court finds that the comparative fingerprint analysis was not "fruit" of an illegal seizure because neither appellee's fingerprints nor the firearm were obtained via any illegal police action. Appellee's fingerprints were already on file in the CCRE, and the firearm was recovered legally. Accordingly, any evidence derived from those two items, i.e. the analysis submitted to the trial court, is untainted by the illegal police activity.

As a preliminary matter, neither party disputes the fact that the firearm recovered in this incident was abandoned, and thus the police seized it legally after they found it on the ground

near where appellee had been standing. "'One who voluntarily abandons property forfeits any expectation of privacy he or she may have in it' and all standing to complain of its warrantless search and seizure." Wechsler v. Commonwealth, 20 Va. App. 162, 173, 455 S.E.2d 744, 749 (1995) (quoting Commonwealth v. Holloway, 9 Va. App. 11, 18, 384 S.E.2d 99, 103 (1989)). Accordingly, the latent fingerprint police recovered from the magazine of the firearm is untainted by any potentially illegal seizure of appellee.

The other piece of evidence used by law enforcement to produce the fingerprint analysis in question was appellee's fingerprint card on file with the CCRE. Appellee's fingerprints on that card were obtained legally by law enforcement during a prior lawful arrest, a fact which is also undisputed. The only question is whether the analysis which linked appellee to the firearm was somehow "tainted" by the potentially illegal seizure or by the fact that "but for" that seizure the police would not have known appellee's name. It was not.

In United States v. Crews, 445 U.S. 463, 474 (1980), the Supreme Court stated that "[the defendant] is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct." In Crews, the defendant/respondent was illegally detained and photographed because police suspected him of committing a series of robberies. Investigators showed his photograph to two of the victims, who positively identified the defendant as the robber. He was subsequently arrested and subjected to a lineup, where both victims again identified him as the perpetrator. At trial, the victims all identified the defendant in court and testified that he was the man who robbed them. The defendant sought to suppress all of the identification testimony, claiming that all of it, including the in-court identifications, derived from the initial illegal arrest and was thus "fruit of the poisonous tree."

The trial court suppressed the photographic and lineup identifications on the ground that they were products of the illegal detention, but allowed the in-court identifications to stand because they were based on the victim's independent recollections untainted by the intervening wrongful arrest. The District of Columbia Court of Appeals reversed, ruling that the in-court identification must be suppressed because "but for respondent's unlawful arrest, the police would not have obtained the photograph that led to his subsequent identification by the complaining witnesses and, ultimately, prosecution of the case." Id. at 469. The Supreme Court reversed the D.C. Court of Appeals, determining that none of the three elements essential to the in-court identification—the victim herself, the victim's ability to describe the perpetrator based upon her recollection of the crime, and the defendant who was physically present in the courtroom—"'had been come at by exploitation' of the violation of the defendant's Fourth Amendment rights." Id. at 471 (quoting Wong Sun, 371 U.S. at 488).

The Supreme Court expressly rejected the "but for" reasoning of the D.C. Court of Appeals, which suppressed the in-court identifications on the theory that they became available "only as a result of official misconduct." Id. at 475. Instead, the Supreme Court noted that a defendant "cannot claim immunity from prosecution simply because his appearance in court was precipitated by an unlawful arrest. An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution . . . ." Id. at 474. Furthermore, the Court said "the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct." Id. Because the "unlawful arrest served merely to link together two extant ingredients" of the in-court identification—the victim's knowledge and the defendant's physical characteristics—the in-court identification was untainted by the illegal seizure. Id. at 475. "The exclusionary rule enjoins the Government from

benefiting from evidence it has unlawfully obtained; it does not reach backward to taint information that was in official hands prior to any illegality." Id.

In reaching its conclusion in Crews, the Supreme Court noted with approval the reasoning from Bynum v. United States, 274 F.2d 767 (D.C. Cir. 1960), a case with facts even closer to the one before this Court. In Bynum, the defendant was illegally arrested and fingerprinted in the course of a robbery investigation. He was tried for the robbery and convicted after the fingerprints taken during his illegal arrest were shown to match prints found at the crime scene. On appeal, the D.C. Circuit found that his prints should have been suppressed because they were obtained pursuant to his illegal arrest, reversed his conviction, and remanded the case giving the prosecution the opportunity to "proceed without using the fingerprints taken at the time of appellant's arrest." Bynum v. United States, 262 F.2d 465, 469 (D.C. Cir. 1958). The prosecution did re-try the defendant, and at the second trial they introduced a set of the defendant's prints that were already on file with the Federal Bureau of Investigation, taken long before the illegal arrest. On appeal the second time, the D.C. Circuit affirmed the conviction because *the prints used in the second prosecution were in the FBI's possession prior to the illegal arrest*. Bynum, 274 F.2d at 767. As the Supreme Court noted approvingly in Crews, "the fingerprint identification made on the basis of information already in the FBI's possession was not tainted by the subsequent illegality and was therefore admissible." 445 U.S. at 476.

In this case, both the print from the firearm and appellee's prints in the CCRE were obtained legally. The print card in the CCRE was already in police hands prior to appellee's encounter with Officer Gains, so it could not be "tainted" by anything that occurred that day. The firearm was abandoned and recovered by the police, who then sent it to the lab for analysis, which revealed the print on the magazine. Appellee's encounter with Gains served only to "link

together" two pieces of evidence already properly in police hands. Crews, 445 U.S. at 475. The resulting fingerprint comparison is not subject to the exclusionary rule because any "Fourth Amendment violation in this case yielded nothing of evidentiary value that the police did not already have in their grasp." Id.

Appellee cites Zimmerman v. Commonwealth, 234 Va. 609, 363 S.E.2d 708 (1988), to support his proposition that "identifying information" obtained during an illegal stop must be suppressed as the fruit of that stop. His reliance on Zimmerman is misplaced. In Zimmerman, the defendant was subjected to an illegal traffic stop, during which the officer ran a warrant check and learned that the driver was a habitual offender prohibited from driving. The officer charged her on the spot with driving after having been declared a habitual offender. Zimmerman appealed her conviction by asserting that but for the illegal stop, the officer would never have learned her name and discovered her status as a habitual offender. The Commonwealth defended her conviction on appeal by citing the rule from Crews that the defendant's identity is not suppressible. Id. at 613, 363 S.E.2d at 710. The Virginia Supreme Court distinguished Zimmerman from Crews by noting that not only the defendant's identity, but also her connection to unlawful activity—the fact that she was driving while not allowed to drive—were discovered through the illegal stop. Id. Put another way, the *entirety* of the Commonwealth's case against Zimmerman derived from the illegal stop. The Commonwealth had no evidence to support the charges against Zimmerman that was not obtained during the stop. Accordingly, once the stop was deemed illegal, there was no evidence to support the conviction. Id.

This case is distinguishable from Zimmerman, and is analogous to Crews, and Bynum, because the Commonwealth has two pieces of evidence to support its case against appellant which are untainted by any illegal police activity. Both the fingerprint card on file and the latent print recovered from the gun are in the Commonwealth's custody legally. As in Crews and

- 9 -

Bynum, the allegedly illegal seizure served only to link the two pieces of legally-acquired evidence together. Just as the in-court identification in Crews and the fingerprint comparison in Bynum were not tainted by the illegal seizures in those cases, so also the fingerprint analysis in this case is not tainted by any potentially illegal police activity. The comparison submitted at trial was produced from two pieces of legally-obtained evidence that were only "linked together" by the questionable police conduct. Therefore, any taint arising from that conduct is sufficiently attenuated. The trial court's decision to suppress the fingerprint analysis was erroneous.

## IV. CONCLUSION

"The doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available." Commonwealth v. Swann, 290 Va. 194, 196, 776 S.E.2d 265, 267 (2015). Because this case is resolved solely on the ruling as to assignment of error number one, this Court does not reach the questions of whether appellee was seized, if his alleged seizure was supported by reasonable suspicion, or if the trial court erred by improperly applying the exclusionary rule. The fingerprint analysis in this case is not "fruit of the poisonous tree" and thus should not have been suppressed. The trial court's order granting the motion to suppress is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.